# ILLINOIS OFFICIAL REPORTS

## Appellate Court

### *Nicholson v. Wilson*, 2013 IL App (3d) 110517

| | |
|---|---|
| Appellate Court Caption | DONNA NICHOLSON, Petitioner-Appellee, v. JEFFREY WILSON, Respondent-Appellant (The State of Illinois, Intervenor-Appellee). |
| District & No. | Third District<br>Docket No. 3-11-0517 |
| Filed | August 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The plenary no-stalking, no-contact order issued against respondent pursuant to the Stalking No Contact Order Act was upheld over respondent's contentions that the Act is unconstitutionally vague and violates both the equal protection clause and the first amendment, since the statute provides a person of ordinary intelligence a reasonable chance to know what is lawful and what is unlawful for purposes of avoiding arbitrary enforcement, and the Act exempts any lawful "exercise of the right to free speech or assembly." |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 11-OP-457; the Hon. Albert L. Purham, Jr., Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

L. Lee Smith and Ambrose V. McCall (argued), both of Hinshaw & Culbertson LLP, of Peoria, for appellant.

Elisabeth R. Pollock (argued) and Andrew W.B. Bequette, both of Beckett & Webber, P.C., of Urbana, for appellee Donna Nicholson.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro (argued), Solicitor General, and Brett E. Legner, Assistant Attorney General, of counsel), for appellee Illinois Department of Human Rights.

Panel

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices McDade and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, Jeffrey Wilson, appeals from a plenary no-stalking, no-contact order entered July 15, 2011. The order was issued pursuant to the Stalking No Contact Order Act (Act) (740 ILCS 21/1 *et seq.* (West 2010)). In issuing the order, the circuit court of Peoria County rejected certain constitutional challenges to the Act. On appeal, the respondent raised, *inter alia*, those same constitutional challenges. The State of Illinois, through the Attorney General, sought and was granted leave by the trial court to intervene to defend the constitutionality of the Act. The State continues to be a party to the appeal. For the reasons that follow, we uphold the constitutionality of the Act.

¶ 2                                                    FACTS

¶ 3    On April 29, 2011, Donna Nicholson, an officer of the Peoria police department, filed a verified petition for a no-stalking, no-contact order pursuant to the Act. The petition included allegations that the respondent, Jeffrey Wilson, another police officer in the same department, had engaged in allegedly inappropriate conduct toward her over the course of several years. The trial court rendered its ruling based upon two specific instances: (1) Wilson's covertly videotaping Nicholson during the fall of 2010; and (2) his use of a GPS tracking device which he placed on Nicholson's car and used to monitor her movements.

¶ 4    Nicholson has been a police officer with the city of Peoria since 1991 and has worked in the vice unit since 2002. Wilson joined the Peoria police force in 1995 and was assigned to the vice unit in 2000. Wilson has been the unit technical officer since he joined the unit and was specifically assigned responsibility for the unit's video, audio, and surveillance

equipment. Wilson was specially trained in electronic surveillance, GPS installation and maintenance, and surveillance equipment engineering.

¶ 5    On November 9, 2010, Lieutenant Michael Eddlemon observed a surveillance camera feed labeled "office" streaming onto the computer at Wilson's work station. Based upon Eddlemon's observation, a departmental investigation was initiated. A department computer video expert was able to establish that a hidden camera was trained on Nicholson's desk and that a pan/tilt/function had been utilized in the video recording to follow her movements around her desk and the office. Equipment records indicated that Wilson was the only officer who had access to the camera. When asked about the recordings, Wilson told his superiors that he had merely been testing the equipment and did not intend to use the camera to monitor Nicholson or anyone else. He claimed that the video must have accidentally recorded Nicholson. When Nicholson was informed that Wilson may have been videotaping her at the office, she became quite upset. She testified at the hearing that she felt victimized, betrayed, and angry that Wilson videotaped her after he had been ordered not to do so in 2008.

¶ 6    In April 2008, Nicholson had reported a similar incident where she believed that Wilson was monitoring her movements in the office by use of video cameras. Nicholson testified that she reported her suspicions to her superiors, but she did not file a formal complaint. Wilson denied ever being told by superiors not to videotape Nicholson. However, Sergeant Jerry Bainter testified that he recalled instructing Wilson not to videotape any individuals at the office without their permission.

¶ 7    In August 2010, a Sentinel GPS tracking device was discovered on Nicholson's car. Wilson denied having anything to do with the device being on her car. The device discovered on the car was a department device that transmitted data to a specific laptop computer, which was kept at Wilson's desk and for which he was responsible. Wilson denied that he placed the GPS device on Nicholson's car, and he claimed that three other officers in the department had the knowledge to use the GPS device. Following a departmental investigation, it was determined that Wilson was likely responsible for the placement of the GPS device on Nicholson's car. At the time of the hearing on Nicholson's petition, the department had not finalized its investigation.

¶ 8    Evidence was also presented at the hearing on Nicholson's petition which appears to indicate that Wilson was transferred to another unit during the investigation and that there had apparently been four "brief run-ins" between Nicholson and Wilson after that date. The trial court discounted the 2008 incident and the "run-ins" in reaching its decision to issue the no-contact order. The trial court found, however, that Wilson had been specifically instructed not to videotape Nicholson in 2008 but did so anyway in November 2010, without her knowledge or consent. The trial court also found, by a preponderance of the evidence, that Wilson had placed the GPS tracking device on Nicholson's car and had used it to engage in surveillance of Nicholson, again without her knowledge or consent. Based upon these factual findings, the trial court determined that Wilson had engaged in the two or more acts of stalking necessary for the issuance of a no-stalking, no-contact order pursuant to the Act.

¶ 9                                              ANALYSIS
¶ 10                                         Standard of Review

¶ 11       Wilson raises three constitutional arguments and one factual argument against the trial court's issuance of the plenary no-stalking, no-contact order. His three constitutional arguments are that the Act is unconstitutionally vague, violates the equal protection clause, and violates the first amendment. Whether a legislative enactment is constitutional presents a question of law, which is reviewed *de novo*. *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 406 (2006). His final argument is that the evidence presented was insufficient to establish that a no-stalking, no-contact order under the Act was warranted. The parties are in agreement that the trial court's decision to issue the order should be affirmed unless it is against the manifest weight of the evidence. See *Best v. Best*, 223 Ill. 2d 342, 350 (2006) (all findings based upon the presence of a preponderance of the evidence are reviewed under the manifest weight standard of review).

¶ 12                                             Vagueness

¶ 13       The first issue to be addressed is whether the Act is unconstitutionally vague. Statutes are presumed constitutional, and the burden of rebutting that presumption is always on the party challenging the statute. *City of Chicago*, 224 Ill. 2d at 406. A statute is considered impermissibly vague for either of two independent reasons: "(1) if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or (2) if it authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* at 441-42. Here, Wilson argues that the statute is unconstitutionally vague because no reasonably intelligent person can determine what conduct the Act prohibits.

¶ 14       Nicholson and the State counter by arguing that Wilson's own conduct in conducting covert surveillance on her fell squarely within the statute's prohibition, such that he cannot maintain that no person could ascertain what conduct is prohibited. We agree. The language of the Act clearly defines "stalking" as "2 or more acts" in which the respondent "directly" or "indirectly" used a "method" or "device" to "follow[ ], monitor[ ],observe[ ], surveil[ ]," "a specific person" in a manner that "would cause a reasonable person to fear for his or her safety" or "suffer emotional distress." 740 ILCS 21/10 (West 2010).

¶ 15       The evidence adduced in this matter established that Wilson was on notice that videotaping and GPS surveillance of Nicholson were within the conduct the Act sought to prohibit. The Act provides that a "reasonable person" is "a person in the petitioner's circumstances" who has "the petitioner's knowledge of the respondent and the respondent's prior acts." 740 ILCS 21/10 (West 2010). Wilson maintains that this statutory language converts the "reasonable person" from the usual objective test (see *McGrath v. Fahey*, 126 Ill. 2d 78 (1988)) to a subjective test, which would require a respondent to be able to predict the subjective emotional state of the petitioner in order to conform his conduct to the requirements of the Act. We disagree. A law survives a vagueness challenge so long as it "give[s] a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful and what conduct is unlawful" and "convey[s] sufficiently clear standards so as to avoid its arbitrary enforcement." (Internal quotation marks omitted.) *People v. Bailey*, 167

Ill. 2d 210, 228, 230 (1995). Under the facts of this case, the Act is clearly sufficient to pass this constitutional muster. Here, Wilson engaged in conduct which, from an objective standpoint, would cause a reasonable person to have some fear for his or her safety or cause that person emotional distress. Wilson placed a tracking device on Nicholson's car for the purpose of surreptitiously tracking her movement and trained a hidden video camera on her desk to secretly record her activities. It cannot be seriously argued that such conduct would not cause fear and emotional distress for a reasonable person in Nicholson's position. We therefore reject Wilson's vagueness challenge to the constitutionality of the Act.

¶ 16                                    Equal Protection

¶ 17     Wilson next maintains that the Act violates his equal protection rights. Specifically, he maintains that the exemption in the Act for actions arising under a *bona fide* labor dispute violates the equal protection clause by creating two classes of potential respondents under that Act and subjecting the two classes to disparate treatment. We note that our supreme court rejected the same equal protection argument in the context of the criminal stalking statute (720 ILCS 5/12-7.3 (West 2002)) originally raised in *People v. Bailey,* 167 Ill. 2d at 233. In *Bailey*, the court held that the distinction between picketing a workplace during a "*bona fide* labor dispute" and other forms of picketing was rationally based upon legitimate state interests. The court held:

> "We find that a rational basis exists for exempting picketing during a *bona fide* labor dispute from the purview of the statute. The State has a legitimate interest in protecting people from physical injury, and it is reasonable to conclude that the conduct the legislature was trying to combat was not the type of conduct that occurs during picketing. It is also rational to conclude that the legislature exempted picketing during *bona fide* labor disputes in an effort to ensure that constitutionally protected activity would not be punished. It therefore was rational for the legislature to exempt this conduct. Because a rational basis exists for the exemption, the stalking statute does not violate the equal protection clause." *Bailey*, 167 Ill. 2d at 233-34.

¶ 18     We also note that, unlike the criminal stalking statute at issue in *Bailey*, the civil stalking Act at issue herein does not treat labor picketing more favorably than any other form of protected speech or associational conduct. Unlike the criminal stalking statute, which carved out an exception for labor picketing alone, the Act at issue herein excludes labor picketing from its definition of stalking, but only after first exempting any lawful "exercise of the right to free speech or assembly." 740 ILCS 21/10 (West 2010). So, while the Act at issue herein exempts labor picketing, it does the same for nonlabor picketing and all other acts of protected expression or association (so long as, like *bona fide* labor picketing, the acts are "otherwise lawful," *e.g.*, do not involve unlawful trespass or are otherwise unlawful). We find, therefore, that the Act does not violate the equal protection clause.

¶ 19                                    First Amendment

¶ 20     Wilson's final constitutional objection to the Act is that it violates his constitutional right to freedom of speech. We disagree. The Act narrowly restricts only the act of stalking, *i.e.*,

following, monitoring, observing, surveilling, or interfering with a person, and does not seek to regulate speech. Further, we note that the only speech that is prohibited by the Act are threats of violence or intimidation, which are not constitutionally protected in any event. See *Bailey*, 167 Ill. 2d at 226-28. Moreover, as we have previously noted, the Act specifically exempts from prohibition any lawful "exercise of the right of free speech or assembly." 740 ILCS 21/10 (West 2010). Clearly, Wilson's first amendment argument lacks merit.

¶ 21                                                    Preponderance of the Evidence

¶ 22    Wilson lastly maintains that, even if the Act passes constitutional muster, the court's determination that a preponderance of the evidence established that he violated the Act and that a plenary order against him was warranted was against the manifest weight of the evidence. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Best*, 223 Ill. 2d at 350.

¶ 23    For Nicholson to prevail in her petition for a plenary order, she was required to prove by a preponderance of the evidence that, on at least two occasions, Wilson followed, monitored, or engaged in surveillance of her, while he knew or should have known that his course of conduct would cause a reasonable person to fear for his or her safety *or* suffer emotional distress. 740 ILCS 21/10 (West 2010). Here, the evidence clearly established that it was more likely true than not true that Wilson had engaged in at least two such actions. While Wilson denied engaging in such acts, there was sufficient evidence upon which the court could have disbelieved Wilson. Moreover, the evidence supported the conclusion that, given Wilson's professional background and expertise with surveillance equipment, it was highly unlikely that he "accidentally" videotaped Nicholson while testing his equipment.

¶ 24    As to whether Wilson knew or should have known that his activities were likely to cause a reasonable person to fear for her safety *or* suffer emotional distress, the record supports the conclusion that Nicholson would likely suffer emotional distress. She had sought assistance from the employer regarding pervious acts of surveillance upon her and indicated that she was very upset about the 2008 incident, regardless of whether Wilson was proven to be the perpetrator. The trial court's finding, therefore, that Wilson's actions were covered under the Act and that a plenary order was warranted to prevent further conduct of a similar nature was not against the manifest weight of the evidence.

¶ 25                                                              CONCLUSION

¶ 26    For the foregoing reasons, the order of the circuit court of Peoria County is affirmed.

¶ 27    Affirmed.