# Illinois Official Reports

## Appellate Court

---

### *People v. Taylor*, 2019 IL App (1st) 160173

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL TAYLOR, Defendant-Appellant. |
| District & No. | First District, Sixth Division <br> No. 1-16-0173 |
| Filed <br> Rehearing denied | November 15, 2019 <br> December 9, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-17533; the Hon. Dennis J. Porter, Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Drew A. Wallenstein, of State Appellate Defender's Office, of Chicago, for appellant. <br><br> Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. <br> Justice Connors concurred in the judgment and opinion. <br> Presiding Justice Mikva dissented, with opinion. |

**OPINION**

¶ 1 Following a 2015 bench trial, defendant Michael Taylor was convicted of aggravated stalking and sentenced to four years' imprisonment with fines and fees. On appeal, defendant contends that his conviction for aggravated stalking (720 ILCS 5/12-7.4 (West 2014)) must be vacated because the underlying stalking statute (*id.* § 12-7.3) is facially unconstitutional due to vagueness. Defendant also contends for the first time on appeal that two of his fees are erroneous and that certain fees are actually fines for which he must receive presentence incarceration credit. For the reasons stated below, we remand for defendant to raise his fines and fees claims in the circuit court and otherwise affirm.

¶ 2                                    I. JURISDICTION
¶ 3 On October 8, 2015, the circuit court found defendant guilty of aggravated stalking. On December 4, 2015, the court sentenced defendant to four years' imprisonment with fines and fees. Defendant filed his notice of appeal that day. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017) governing appeals from a final judgment of conviction in a criminal case.

¶ 4                                    II. BACKGROUND
¶ 5 Defendant was charged with two counts of aggravated stalking (720 ILCS 5/12-7.4(a)(3) (West 2014)) for, between August 18 and August 30, 2014, in violation of an order of protection in case No. 14-DV-74667, knowingly engaging in a course of conduct against Tiffany DeShields by, on two or more occasions, surveilling her, calling her, sending her text messages, and threatening her. The counts alleged that defendant knew or should have known that his course of conduct would cause a reasonable person to, in count I, fear for her safety, and in count II, suffer emotional distress. See *id.* § 12-7.3(a)(1), (2).

¶ 6 Defendant was also charged with four counts of stalking allegedly committed between July 12 and August 30, 2014. Two counts (counts III and IV) mirrored the two counts of aggravated stalking except for not alleging that defendant violated an order of protection. *Id.* Count V alleged that defendant knowingly and without justification followed or surveilled DeShields on or about July 12 and August 23 and transmitted a threat of bodily harm to DeShields by threatening to kill her, while count VI alleged the same two instances of surveillance and alleged that defendant placed DeShields in reasonable apprehension of immediate or future bodily harm. *Id.* § 12-7.3(a-3)(1), (2).

¶ 7 At trial, DeShields testified that, in August 2014, she had been dating defendant for about two months. She broke up with him on July 12, 2014, because she learned that he was not employed. He was at her home when she told him she was breaking up with him, and he left but then began "banging on" the back door. When she told him to go away, he made various remarks including, "I will kill myself. I will kill you," so she called the police. On July 24, defendant came to her home, told her that he had a job, and asked her to "give me another chance." Because he had a job, she "did get back with him at that time." However, on July 29, after defendant borrowed her cell phone, she broke up with him again. He left with her cell phone and took her car. When he returned the car on July 31, he apologized for taking her car

and home keys. She asked him to get into her car, and she drove him to the police station. As they were in the car, he said he would kill her and himself "if you don't get back with me." When she brought defendant to the police station, she obtained an emergency order of protection against him.

¶ 8 On August 18, 2014, the circuit court granted DeShields a plenary order of protection against defendant. At trial, she identified copies of the August 1 emergency and August 18 plenary orders of protection. On August 23, defendant was at DeShields's home "as usual," talking with her through the back door and stating that he would "kill you" and "kill myself." She told him to leave, reminded him that he was "not supposed to be here," and mentioned calling the police. As he left, she saw him take her daughter's bicycle from the backyard, throwing it over the fence. She called the police, then called defendant to demand the return of the bicycle. When he refused "[be]cause you won't be with me," she said that "we could be together, just bring the bike." She said so to induce him to return the bicycle. He returned the bicycle later that day by bringing it "close" to her home.

¶ 9 On August 25, defendant was again in DeShields's backyard cursing, begging, and "banging" on her back door "trying to break down the door." In his begging, he repeated that he would kill himself if they were not together. She called the police, and he left. On the afternoon of August 29, defendant called her on the telephone; she recognized his voice. He said he was outside her home and asked her to come outside and "please be together." She called the police, but he was gone when they arrived. That night, two back windows of her home were broken by thrown bricks, and she saw defendant in the backyard with another brick in his hand that he threw "but missed." She called the police, and he fled.

¶ 10 Defendant sent DeShields "a lot" of text messages in the latter half of August 2014, using the cell phone he borrowed from her. Many of his messages said that he would "get back with" her, and some were threatening, including one threatening to kill DeShields and break her car windows. DeShields was shown a copy of an August 12 message in which defendant threatened to kill DeShields and Shavon Clash, her neighbor and babysitter; she agreed that the copy was accurate. The copy includes messages that DeShields should "[w]atch car before it blow up" and "d[o]nt get yo[ur] nieghbor [sic] killed." This threat left her "very terrified for me and my children." Indeed, all of these incidents left her feeling "threatened for my safety because of the defendant [a]ll the time" and also afraid for her two children.

¶ 11 On cross-examination, DeShields testified that defendant was "bothering me those whole two weeks" between the July 12 breakup and July 24 but she did not call the police because she was open to resuming the relationship if he had a job, as he did on July 24. She broke up with him on July 29 because, when he borrowed her cell phone, she saw texts between himself and various women referring to "how he slept with them." When he left that day, she unsuccessfully asked for the return of her cell phone but did not know he was leaving with her keys as well. When he returned her car on July 31 and she drove him to the police station, she did not mention to him at first where they were going. Once she did, he said he had to be with her, threatened to kill her if she was not with him, and asked her not to bring him to the station. He did not try to leave the car until they reached the station and he fled, but the police caught him immediately.

¶ 12 When DeShields filed for an emergency order of protection, she mentioned his death threats but not taking her cell phone or car, explaining that he returned the car by then and that he did not take the cell phone but failed to return it after borrowing it. When asked if she told

police on the night of August 29 to 30 that she saw defendant in her yard with a brick in hand, she replied "I thought I did." She could not recall if she called police after the August 12 text message, though she called police about 30 times and filed about 20 reports. She admitted that she replied "okay" to one of defendant's text messages but explained that "that's the only time I was nice to him, the day he stole my daughter's bike" and that she tried to be calm when dealing with defendant "because you don't know what they're capable of."

¶ 13 Clash, DeShields's neighbor and babysitter in August 2014, testified that DeShields was dating defendant then, identifying defendant at trial. She saw him walking with DeShields in the latter half of August 2014. In the same period, she saw him "hop" the fence separating her home from DeShields's home and then heard him "banging and knocking" at DeShields's door and asking her to let him it. On another occasion, Clash saw him "verbally abusing" DeShields on the street in front of her home. On "[n]umerous" occasions, Clash saw defendant enter DeShields's backyard, stand outside her back door, and ask to be let in.

¶ 14 Following arguments, the court found defendant guilty of aggravated stalking under count II, based on causing emotional distress by his course of action. It also found him guilty of all four counts of stalking and merged them into aggravated stalking.

¶ 15 Defendant filed a general posttrial motion, claiming without particular allegations that he was denied due process, equal protection of the laws, and a fair trial. Counsel stood on the motion and his closing arguments regarding the sufficiency of the evidence, and the court denied the motion without further findings.

¶ 16 Following a sentencing hearing, the court entered a final judgment on count II only (720 ILCS 5/12-7.4(a)(3), 12-7.3(a)(2) (West 2014)) and sentenced defendant to four years' imprisonment with $449 in fines and fees. This appeal timely followed.

¶ 17                                III. ANALYSIS
¶ 18 On appeal, defendant challenges his aggravated stalking conviction and raises issues with his fines and fees.

¶ 19                            A. Aggravated Stalking
¶ 20 Defendant primarily contends that his aggravated stalking conviction and two of his merged counts of stalking must be vacated because a portion of the stalking statute is facially unconstitutional due to vagueness.[1] He seeks remand for the trial court to sentence him on two merged counts of stalking, counts V and VI, that he concedes are not improper.

¶ 21                            1. Stalking Statutes
¶ 22 A person commits aggravated stalking when he or she commits stalking and violates an order of protection. *Id.* § 12-7.4(a)(3). A person commits stalking

---

[1]Pending before our supreme court is an appeal from an unpublished order affirming a stalking conviction against contentions that the stalking statute is vague and violates the rights to due process and free speech. *People v. Ashley*, 2018 IL App (4th) 150293-U, *appeal allowed*, No. 123989 (Ill. Nov. 28, 2018).

"when he or she knowingly engages in a course of conduct directed at a specific person, and he or she knows or should know that this course of conduct would cause a reasonable person to:

(1) fear for his or her safety or the safety of a third person; or

(2) suffer other emotional distress." *Id.* § 12-7.3(a).

A "course of conduct" is

"2 or more acts, including but not limited to acts in which a defendant directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to or about, a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet." *Id.* § 12-7.3(c)(1).

"Emotional distress" is "significant mental suffering, anxiety or alarm." *Id.* § 12-7.3(c)(3).

¶ 23        A person also commits stalking

"when he or she, knowingly and without lawful justification, on at least 2 separate occasions follows another person or places the person under surveillance or any combination thereof and:

(1) at any time transmits a threat of immediate or future bodily harm, sexual assault, confinement or restraint and the threat is directed towards that person or a family member of that person; or

(2) places that person in reasonable apprehension of immediate or future bodily harm, sexual assault, confinement or restraint to or of that person or a family member of that person." *Id.* § 12-7.3(a-3).

¶ 24        The stalking statute defines the terms "follows another person" and "places a person under surveillance." *Id.* § 12-7.3(c)(5), (7). Surveilling a person includes "remaining present outside the person's school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant." *Id.* § 12-7.3(c)(7)(1).

¶ 25                                    2. Constitutionality

¶ 26        Statutes are presumed constitutional, and the party challenging the constitutionality of a statute bears the burden of proof. *People v. Relerford*, 2017 IL 121094, ¶ 30. The primary objective in construing a statute is to ascertain and effectuate the legislature's intent in enacting the statute, and courts must construe a statute in a manner that upholds its validity and constitutionality if reasonably possible. *Id.* Whether a statute is constitutional is a question of law reviewed *de novo*. *Id.* A facial challenge to a criminal statute, claiming that the statute is void *ab initio*, may be raised at any time. *Id.* ¶ 29 n.2.

¶ 27                          3. Constitutionality of the Stalking Statute

¶ 28        In *Relerford*, our supreme court held "that the portion of subsection (a) of the stalking statute that makes it criminal to negligently 'communicate[ ] to or about' a person, where the speaker knows or should know the communication would cause a reasonable person to suffer emotional distress, is facially unconstitutional." *Id.* ¶ 63. Finding that portion of the stalking statute to be severable, the *Relerford* court held that "the phrase 'communicates to or about' must be stricken from subsection (a)." *Id.* ¶ 65. In reaching its decision, the supreme court held

that the stalking statute's "prohibition against distressing communications to or about a person stands separate and apart from the proscription against threats" (*id.* ¶ 39) and held that:

> "subsection (a) embraces a vast array of circumstances that limit speech far beyond the generally understood meaning of stalking. Indeed, the amended provision criminalizes any number of commonplace situations in which an individual engages in expressive activity that he or she should know will cause another person to suffer emotional distress. The broad sweep of subsection (a) reaches a host of social interactions that a person would find distressing but are clearly understood to fall within the protections of the first amendment." *Id.* ¶ 52.

However, the supreme court rejected the proposition that "due process does not permit criminal liability based on negligent conduct," noting that "criminal negligence has been recognized as a valid basis for imposing criminal liability" and finding that "substantive due process does not categorically rule out negligence as a permissible mental state for imposition of criminal liability." *Id.* ¶ 22.

¶ 29 Since *Relerford*, this court has held that subsection (a)(2) of the stalking statute is unconstitutional for being overbroad insofar as it defines stalking as knowingly threatening a person two or more times when the defendant knows or should know that the threats would cause a reasonable person to suffer emotional distress. *People v. Morocho*, 2019 IL App (1st) 153232, ¶¶ 24, 44, 48. While a true threat—one that the speaker means to communicate a serious expression of intent to commit an act of unlawful violence against a certain person or persons—is not constitutionally protected, subsection (a)(2) does not require that a person threaten an act of unlawful violence. *Id.* ¶¶ 34-36. Thus,

> "Subsection (a)(2) reaches a vast number of circumstances that limit speech far beyond the generally understood meaning of stalking. [Citation.] Our society is quick to condemn threats, and 'true threats' are no doubt worthy of such condemnation, but under certain circumstances, threats are a perfectly ordinary means by which we induce others to undertake positive or corrective action." *Id.* ¶ 41.

In other words,

> "Many times a person who twice threatens lawful action unrelated to violence and actually intends to trigger distress of another for the purpose of motivation is not a criminal stalker; he or she is an ordinary member of society engaged in any number of expressive actions attendant to everyday social, business, legal, and political interaction." (Emphasis omitted.) *Id.* ¶ 43.

"To be clear, we hold only the following offense unconstitutional: A person commits stalking when he or she 'threatens' a specific person two or more times, and he or she knows or should know the threats would cause a reasonable person to suffer emotional distress." *Id.* ¶ 49 (citing 720 ILCS 5/12-7.3(a)(2), (c)(1) (West 2014)).

¶ 30 However, another panel of this court has declined to follow *Morocho* and held that the right to free speech did not encompass knowingly making two or more threats to someone that a defendant knew or should have known would cause a reasonable person to undergo significant emotional distress or mental suffering. *People v. Crawford*, 2019 IL App (1st) 160184, ¶¶ 42, 61. Noting that the right to free speech does not protect true threats whether or not the speaker actually intended to carry out the threat, the *Crawford* court rejected the proposition that subsection (a) is unconstitutional because it does not require that a communication at issue

express an intent to act in the future. *Id.* ¶¶ 57, 63. This court rejected the proposition, based on *Morocho*, that a statute does not survive free-speech scrutiny unless it contains the elements of a true threat as express elements of the offense. *Id.* ¶ 65. The *Crawford* court refrained from resolving whether true threats are determined by an objective standard of reasonableness or a subjective standard of the defendant's intent, finding the statements at issue in the case before it were true threats by either measure. *Id.* ¶¶ 73-76. Citing the discussion in *Relerford* of criminal liability based on negligence, the *Crawford* court also rejected the proposition that due process is violated by a felony conviction for negligent infliction of emotional distress, finding that such a statutory provision does not criminalize innocent conduct. *Id.* ¶¶ 15, 38-40.

¶ 31                                                        4. Vagueness

¶ 32        A statute is vague when it fails to (1) give a person of ordinary intelligence a reasonable opportunity to know what conduct is or is not lawful so he may act accordingly, or (2) provide explicit standards for police and courts enforcing the statute to prevent arbitrary and discriminatory enforcement. *People v. Howard*, 2017 IL 120443, ¶ 25. A statute is not vague if judicial construction renders it sufficiently definite to preclude arbitrary or discriminatory application. *People v. Einoder*, 209 Ill. 2d 443, 450-51 (2004). A statute need not define proscribed conduct with perfect clarity or mathematical precision, nor will a statute be declared vague merely because a defendant presents a hypothetical situation that disputes the meanings of some of its terms. *Bartlow v. Costigan*, 2014 IL 115152, ¶ 41; *Einoder*, 209 Ill. 2d at 451. A statute is not vague when it clearly applies to the defendant's conduct. *Einoder*, 209 Ill. 2d at 452.

¶ 33        In *Nicholson v. Wilson*, 2013 IL App (3d) 110517, ¶¶ 13-15, this court rejected a contention that the Stalking No Contact Order Act (Act) (740 ILCS 21/1 *et seq.* (West 2010)) is unconstitutionally vague. That Act defines "[s]talking," "course of conduct," and "emotional distress" almost identically to the stalking statute. *Id.* § 10; 720 ILCS 5/12-7.3(a)(2) (West 2010). Both statutes sanction a course of conduct, performed directly or indirectly, that a defendant or respondent knows or should know would cause a reasonable person emotional distress.

¶ 34        In *People v. Sucic*, 401 Ill. App. 3d 492, 505 (2010), this court rejected the proposition that the cyberstalking statute (720 ILCS 5/12-7.5 (West 2008)) is vague because "citizens are not apprised of the prohibited conduct and arbitrary enforcement results where the legislature did not precisely define a standard by which to judge 'emotional distress' or 'mental anguish' caused by a statement that 'alarms, torments, or terrorizes' the victim." This court found that "the scope of punishable conduct under the [cyberstalking] statute is limited by the individual's specified intent to 'haras[s]' by communicating a 'threat' so as to 'engage in a knowing and willful course of conduct' directed at the victim that 'alarms, torments, or terrorizes' the victim." *Sucic*, 401 Ill. App. 3d at 505. Noting that the constitution does not demand impossible standards of specificity in statutory drafting, we determined

>    "that application of the ordinary meaning of the statutory language and recognition of the evil the statute intends to prevent, *i.e.*, to prevent violent attacks by allowing the police to act before the victim is actually injured and to prevent the terror produced by harassing actions [citation], provides adequate notice and prevents arbitrary enforcement." *Id.*

¶ 35    In *People v. Butler*, 375 Ill. App. 3d 269, 273 (2007), this court similarly rejected the proposition that the witness harassment statute (720 ILCS 5/32-4 (West 2004)) is vague because "citizens are not apprised of the proscribed conduct and arbitrary enforcement results where the legislature did not precisely define 'mental anguish' or 'emotional distress,' " reiterating that impossible standards of specificity are not required for a statute to not be vague.

¶ 36                                                    5. The Instant Case

¶ 37    Here, defendant contends that subsection (a) of the stalking statute is vague on two grounds. He first argues that it refers contradictorily or illogically to "conduct directed at a specific person" but performed "directly, indirectly, or through third parties." He also argues that subsection (a) of the stalking statute is vague because it criminalizes emotional distress.

¶ 38    We may briefly dispose of the latter point by referring to *Nicholson*, *Sucic*, and *Butler*, which disposed of essentially the same argument against statutes with provisions similar to the stalking provision at issue. We see no reason not to follow our reasoning in *Sucic* because the cyberstalking statute and subsection (a) of the stalking statute both create offenses from a defendant's course of conduct that he or she knows or should know would cause a reasonable person emotional distress (720 ILCS 5/12-7.3(a), 12-7.5(a) (West 2014)), and this court has stated "that the cyberstalking and stalking statute are parallel statutes" (*Crawford*, 2019 IL App (1st) 160184, ¶ 24). We also see no reason not to follow *Nicholson* because, as stated above, the Act upheld therein is substantively identical to the stalking statute.

¶ 39    Returning to the first alleged instance of vagueness, we see no contradiction or uncertainty in the statutory language at issue. When the stalking statute refers to a "course of conduct *directed* at a specific person" (emphasis added) (720 ILCS 5/12-7.3(a) (West 2014)), it means one targeted or aimed at a specific person. When the stalking statute refers to certain acts by "a defendant *directly*, indirectly, or through third parties" (emphasis added) (*id.* § 12-7.3(c)(1)), it does not mean targeted or aimed but clearly in context invokes the sense of direct that contrasts with indirect. Contrary to defendant's argument, we do not consider it in the least contradictory or illogical to proscribe conduct *directed* at a particular person and performed by *indirect* means.

¶ 40    As noted above, a statute is not vague where it clearly applies to the defendant's conduct. Here, the trial evidence showed that defendant repeatedly entered DeShields's backyard and knocked on her back door during the period alleged in the indictment and while subject to orders of protection covering DeShields. Thus, he on at least two occasions knowingly remained present outside a residence other than his own as clearly proscribed by subsection (a) of the stalking statute. We follow *Crawford* rather than *Morocho* and conclude that defendant also made multiple true threats against DeShields by telling her that he would kill her and texting her that she should "[w]atch car before it blow up." DeShields testified that she felt terrified and threatened—that is, emotionally distressed—by defendant's actions, and defendant knew or should have known that repeatedly appearing at DeShields's home and threatening her life would cause a reasonable person emotional distress. Subsection (a) of the stalking statute thus clearly applied to defendant's conduct. In other words, we find that he did not engage in innocent conduct that was improperly criminalized by a vague statute.

¶ 41    Lastly, defendant argues in his reply brief that subsection (a) violates due process because it criminalizes negligent infliction of emotional distress. However, he did not so contend in his initial brief. A claim raised for the first time in a reply brief is forfeited. *Morse v. Donati*, 2019

- 8 -

IL App (2d) 180328, ¶ 28. Moreover, we find that the issue of criminal liability under stalking and related offenses for knowingly engaging in conduct that a defendant knew or should have known would cause emotional distress was disposed of in *Relerford* and *Crawford* with the conclusion that due process is not violated thereby. We see no reason to conclude otherwise here.

¶ 42    We conclude that subsection (a) of the stalking statute is not vague. Thus, defendant's conviction for aggravated stalking based on emotional distress under subsection (a) of the stalking statute is not erroneous.

¶ 43                                B. Fines and Fees

¶ 44    Defendant contends, for the first time on appeal, that two of his fees were improperly assessed and that certain of his fees are actually fines for which he must receive monetary presentence incarceration credit.

¶ 45    Illinois Supreme Court Rule 472(a)(1), (2) (eff. Mar. 1, 2019) sets forth the procedure in criminal cases for correcting sentencing errors in, as relevant here, the "imposition or calculation of fines, fees, assessments, or costs" and "application of *per diem* credit against fines." Rule 472(a) provides that, effective March 1, 2019, the circuit court retains jurisdiction to correct the enumerated errors at any time following judgment in a criminal case, even during the pendency of an appeal. Ill. S. Ct. R. 472(a) (eff. Mar. 1, 2019). "No appeal may be taken" on the ground of any of the sentencing errors enumerated in the rule unless that alleged error "has first been raised in the circuit court." Ill. S. Ct. R. 472(c) (eff. Mar. 1, 2019).

¶ 46    Here, defendant did not raise his challenges to the fines and fees order in the circuit court. He filed his notice of appeal well before the effective date of Rule 472(a) through (d), and this court has found that Rule 472 applies prospectively. *People v. Barr*, 2019 IL App (1st) 163035, ¶¶ 6, 8, 15. However, since *Barr*, our supreme court has amended Rule 472 to add paragraph (e):

> "In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019).

Unlike paragraphs (a) through (d) of Rule 472, which were adopted on February 26 but did not take effect until March 1, paragraph (e) took effect immediately. We conclude that our supreme court intended that paragraph (e), by its clear language and immediate effective date, apply to all cases pending on appeal as of March 1, 2019, which would be the requisite ongoing proceedings. *Barr*, 2019 IL App (1st) 163035, ¶¶ 7-15; *Morocho*, 2019 IL App (1st) 153232, ¶ 52.

¶ 47    Defendant's case was pending before this court on March 1, 2019, and we shall therefore apply Rule 472(e). It directs us to remand an appeal raising for the first time any of the sentencing errors enumerated in the rule—as this appeal does—so that the defendant may file in the circuit court a motion raising such errors pursuant to Rule 472(a).

## IV. CONCLUSION

Accordingly, pursuant to Rule 472(e), we remand this cause to the circuit court to allow defendant to file a motion pursuant to Rule 472(a). We otherwise affirm the judgment of the circuit court.

Affirmed and remanded.

PRESIDING JUSTICE MIKVA, dissenting:

I adhere to the position that I took as a panel member in *People v. Morocho*, 2019 IL App (1st) 153232, that section 12-7.3(a)(2) of the Criminal Code of 2012 (Stalking Statute) (720 ILCS 5/12-7.3(a)(2) (West 2014)), which makes it illegal to knowingly threaten a specific person two or more times if the defendant knows or should know the threats would cause a reasonable person to suffer emotional distress, is unconstitutionally overbroad. I would reverse Mr. Taylor's conviction and remand for resentencing on counts III, V, and VI, none of which rested on this provision of the Stalking Statute.