# Illinois Official Reports

## Supreme Court

*People v. Ashley*, 2020 IL 123989

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARSHALL ASHLEY, Appellant. |
| Docket No. | 123989 |
| Filed | January 24, 2020 |
| Modified upon denial of rehearing | March 23, 2020 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. Scott D. Drazewski, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and Jonathan Yeasting, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Michael M. Glick and Garson S. Fischer, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Burke and Justices Thomas, Kilbride, Garman, Karmeier, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1 Following a bench trial in the circuit court of McLean County, defendant Marshall Ashley was convicted of stalking (720 ILCS 5/12-7.3(a)(2), (c)(1) (West 2014)) and was sentenced to serve a prison term of one year and six months. Defendant appealed, arguing that the provisions of the stalking statute under which he was convicted are facially unconstitutional in violation of the first amendment and substantive due process as guaranteed by the United States Constitution (U.S. Const., amends. I, XIV). The appellate court rejected defendant's arguments and affirmed his conviction. 2018 IL App (4th) 150293-U. This court granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018). We now affirm the judgment of the appellate court.

¶ 2                                    I. BACKGROUND

¶ 3 In October 2014, the State charged defendant with two counts of felony stalking, alleging he knowingly engaged in a course of conduct directed at Keshia Tinch, which defendant knew or should have known would cause a reasonable person (1) to fear for her safety (count I) (720 ILCS 5/12-7.3(a)(1) (West 2014)) and (2) to suffer emotional distress (Count II) (*id.* § 12-7.3(a)(2)).

¶ 4 In a bench trial, the State presented the following evidence. Defendant and Tinch had been dating for approximately two years, had a child together, and lived together in an apartment in Normal, Illinois.

¶ 5 Karen Miller, Tinch's mother, testified that she and several other relatives, including children, were at the apartment on October 21, 2014, when Tinch received a phone call from defendant. During that call, which Miller heard on speaker mode, defendant and Tinch argued, and defendant threatened to come over and kill Tinch and "everyone with a banger," which Miller understood to mean a gun.

¶ 6 Tinch testified that, after receiving this phone call, she, Miller and the other relatives went to Miller's house. While in transit, Tinch called the police and gave them her address and her mother's address.

¶ 7 Nicholas Mishevich, an officer with the Normal Police Department, testified that he responded to Miller's address. While Mishevich was present, Tinch received multiple phone calls and text messages from the same phone number. Mishevich took photographs of the text messages and identified People's exhibit Nos. 1-A and 1-B as accurately depicting the text messages he saw on Tinch's phone that night.

¶ 8 Officer Jonathan McCauley testified that he was on patrol on October 21, 2014, and was dispatched to the area near Tinch's apartment to look for defendant. He pulled over a vehicle with defendant in the passenger seat and took defendant into custody. McCauley interrogated

defendant at the police station and documented the text messages exchanged with Tinch on defendant's phone.

¶ 9        Text messages from defendant to Tinch introduced at trial included the following:[1]

2:24 p.m.: "you finna make me come look for you're a***"

3:04 p.m.: "I love you too much to see u dead dummy. But [I] guarantee u this. I can make u suffer. If [I] want to."

3:29 p.m.: "You rite start to think more before u talk that s*** will get u hurt or killed talking dumb put your mouth bay"

3:30 p.m.: "Out"

7:05 p.m.: "So y haven't you text or call me but it[']s cool [K]eshia [I] guess we don[']t have to talk like that every time"

7:12 p.m.: "Just saying b*** u don[']t check up on me you don't know how [I']m living"

7:12 p.m.: "Where the f*** are u"

7:12 p.m.: "Cause rode past in seen lights on there"

7:23 p.m.: "Answer my f*** question why is there lights on at the house"

7:26 p.m.: "You got my blood boiling"

7:45 p.m.: "Y u aint answering the phone scary a*** b***"

7:54 p.m.: "So u ain't gon pick up huh"

7:57 p.m.: "Rite you not picking up cause uk im f*** rite b*** [I] swear [I] tried to trust your thot a*** w[h]en [I] go over there any tim[e] said u had a n*** over there imma go in on you're a***"

8:23 p.m.: "I swear b*** if a n*** there its g[o]ing to be one"

8:24 p.m.: "U them f*** up"

8:31 p.m.: "I hope whoever you got it when I got guns"

8:57 p.m.: "So u called the law"

Defendant also sent Tinch a photograph of a handgun. The messages documented from defendant's phone were consistent with those taken from Tinch's phone, except that defendant's phone did not contain the 8:31 p.m. message referencing guns.

¶ 10        Tinch testified that the text messages "scared" her and the message shortly after 7 p.m. "terrified" her because she "knew right then and there that [defendant] was going to come after [her] even more." Over defense objection, Tinch was permitted to testify to two prior uncharged incidents in which defendant held Tinch at gunpoint.

¶ 11        Defendant testified in his defense that he and Tinch lived together and had been arguing often in October 2014. At some point, Tinch informed defendant that she was getting evicted from the apartment. On October 21, 2014, Tinch had called defendant to ask if he would help her move because someone was coming to change the locks that day. Defendant was "heated" because he had given Tinch money for rent, which he learned she used for other things. Defendant admitted that he engaged in some heated exchanges with Tinch but denied that he threatened her and specifically denied threatening her with a gun.

---

[1]All quotations are [*sic*] unless an alteration is indicated.

¶ 12    Two prior convictions, a 2013 criminal trespass to residence and a 2014 domestic battery, were admitted for the purpose of impeaching defendant's testimony.

¶ 13    The circuit court found defendant guilty of stalking based on the conduct alleged in count II, finding that defendant's text messages and phone calls would cause a reasonable person to suffer emotional distress. Defendant was subsequently sentenced to a term of one year and six months' imprisonment, followed by a four-year term of mandatory supervised release.

¶ 14    On appeal, defendant argued that subsection (a) of the stalking statute violated state and federal constitutional guarantees of (1) due process, because it lacks a *mens rea* requirement and is unduly vague, and (2) free speech, because it overbroadly criminalizes a substantial amount of protected speech.

¶ 15    The appellate court rejected defendant's argument that subsection (a) violates due process, relying on this court's decision in *People v. Relerford*, 2017 IL 121094, ¶ 22. 2018 IL App (4th) 150293-U, ¶ 26.

¶ 16    The appellate court acknowledged that *Relerford* held the "communications to or about" portion of the statute was overbroad and unconstitutionally restricted the right to free speech. *Id.* ¶¶ 35-37. However, the court determined that defendant's conviction could be sustained based on conduct that was otherwise prohibited by the stalking statute, specifically, that his conduct threatened Tinch. *Id.* ¶¶ 41-43.

¶ 17    The appellate court acknowledged that there was conflicting precedent as to whether a true threat requires a showing of the speaker's subjective intent to threaten or, alternatively, an objective standard for statements that are reasonably understood to convey a threat even if the speaker did not so intend. The court found that it need not determine which standard governs because defendant's statements to Tinch were true threats under either standard. *Id.* ¶ 42. Defendant appeals to this court.

¶ 18                                    II. ANALYSIS

¶ 19    In challenging his conviction, defendant asserts that the provisions of the stalking statute under which he was convicted are facially unconstitutional because they violate the right to free speech as guaranteed under the United States Constitution. U.S. Const., amend. I. He also argues that the applicable provisions violate substantive due process because they improperly criminalize innocent conduct. U.S. Const., amend. XIV.

¶ 20                              A. The Stalking Statute

¶ 21    Illinois's stalking statute was adopted in 1992 and defined the offense as requiring an intentional threat of a violent crime in addition to multiple acts of following or surveillance in furtherance of the threat. See Pub. Act 87-870, § 1 (eff. July 12, 1992) (adding 720 ILCS 5/12-7.3(a)). The statute was subsequently modified to require that the prohibited conduct be undertaken "knowingly and without lawful justification." Pub. Act 88-402, § 5 (eff. Aug. 20, 1993). This court rejected a first amendment overbreadth challenge to the 1994 version of the statute, holding that it prohibited only speech that was an integral part of unlawful conduct. See *People v. Bailey*, 167 Ill. 2d 210, 227 (1995). This conclusion was based on the fact that the statute embraced only activities performed without lawful authority and required that the defendant threaten the victim and take action in furtherance of the threat. *Id.* at 227-28.

¶ 22 Of relevance here, the General Assembly again amended the statute in 2010 to expand the definition of the offense of stalking. See Pub. Act 96-686, § 5 (eff. Jan. 1, 2010). Although the prior version of the offense was retained and renumbered as subsection (a-3), the legislature also crafted new statutory language to encompass additional prohibited conduct. See *id.*; *Relerford*, 2017 IL 121094, ¶ 27. The amended statute included provisions that targeted conduct accomplished through the use of newer technology such as electronic communications as well as conduct that historically has led to homicide. Pub. Act 96-686, § 5 (eff. Jan. 1, 2010). In discussing the 2010 modifications, Senator Hutchinson, a sponsor of the proposed public act, stated that it

> "redefines stalking, aggravated stalking, and cyberstalking as knowingly engaging in a course of conduct directed at a specific person, where the defendant knows or should know that this course of conduct would cause a reasonable person to either fear for their safety or for the safety of a third party or to suffer emotional distress. *** A recent U.S. Department of Justice study said that seventy-six percent of female homicide victims were stalked first, prior to their death. It's terrifying and it's something that we need to do all we can to protect our victims from. This will broaden the definition of stalking. It amends the Criminal Code to update our stalking laws. *** [I]t encompasses all technologies that stalkers use to track and harass their victims." 96th Ill. Gen. Assem., Senate Proceedings, May 21, 2009, at 125 (statements of Senator Hutchinson).

¶ 23 Following adoption of the 2010 amendments, the version of the stalking statute that was in effect when defendant was charged and convicted provided, in relevant part, as follows:

> "(a) A person commits stalking when he or she knowingly engages in a course of conduct directed at a specific person, and he or she knows or should know that this course of conduct would cause a reasonable person to:
>
>> (1) fear for his or her safety or the safety of a third person; or
>>
>> (2) suffer other emotional distress.
>
> (a-3) A person commits stalking when he or she, knowingly and without lawful justification, on at least 2 separate occasions follows another person or places the person under surveillance or any combination thereof and:
>
>> (1) at any time transmits a threat of immediate or future bodily harm, sexual assault, confinement or restraint and the threat is directed towards that person or a family member of that person; or
>>
>> (2) places that person in reasonable apprehension of immediate or future bodily harm, sexual assault, confinement or restraint to or of that person or a family member of that person." 720 ILCS 5/12-7.3(a), (a-3) (West 2014).

The phrase "course of conduct," as defined in subsection (c)(1), included:

> "2 or more acts, including but not limited to acts in which a defendant directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to or about, a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet. A course of conduct may include contact via electronic communications." *Id.* § 12-7.3(c)(1).

¶ 24    Also, subsection (c) defined "emotional distress" as "significant mental suffering, anxiety or alarm." *Id.* § 12-7.3(c)(3). The phrase "reasonable person" is defined as "a person in the victim's situation." *Id.* § 12-7.3(c)(8).

¶ 25    Thus, under the terms of the amended statute, two or more threats that the defendant knows or should know would cause a reasonable person to suffer emotional distress constitute a course of conduct sufficient to establish the offense of stalking. See *id.* § 12-7.3(a)(2), (c)(1).

¶ 26                    B. The First Amendment and Its "True Threat" Exception

¶ 27    We initially consider defendant's claim of unconstitutionality under the first amendment right to free speech. Defendant asserts that the provisions of the amended stalking statute under which he was convicted (*id.*) render the statute overly broad in violation of the first amendment because they criminalize protected speech. The State disputes defendant's argument, contending that the term "threatens" as used in subsection (c)(1) refers only to true threats that fall outside the protection of the first amendment. We agree with the State.

¶ 28    The first amendment, which applies to the states through the fourteenth amendment, precludes the enactment of laws "abridging the freedom of speech." U.S. Const., amends. I, XIV. Generally, a statute is overly broad on its face if it proscribes constitutionally protected activity as well as activity that may be prohibited without offending constitutional rights. *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972); *Zwickler v. Koota*, 389 U.S. 241, 249-50 (1967) (collecting cases); *Relerford*, 2017 IL 121094, ¶ 50. The doctrine of first amendment overbreadth " 'represents a departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court.' " *People v. Minnis*, 2016 IL 119563, ¶ 14 (quoting *Bates v. State Bar*, 433 U.S. 350, 380 (1977)). As a consequence, the overbreadth doctrine allows a party to assert a facial violation of the first amendment, even if that party's conduct would not fall within the amendment's protection. *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *Relerford*, 2017 IL 121094, ¶ 50; *Minnis*, 2016 IL 119563, ¶ 14. This exception to the traditional requirement of standing is justified by the important goal of avoiding the potential chilling effect that overly broad statutes have on the exercise of protected speech. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003); *Relerford*, 2017 IL 121094, ¶ 50; *Minnis*, 2016 IL 119563, ¶ 14.

¶ 29    A statute "may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.' " *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). Considering its limited application, the overbreadth doctrine should be applied "only as a last resort" and only if the degree of overbreadth is substantial. *Broadrick*, 413 U.S. at 613. In addition, facial overbreadth will not be invoked when the challenged statute is subject to a limiting construction. *Id.*

¶ 30    Under the first amendment, a government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." (Internal quotation marks omitted.) *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002); *Relerford*, 2017 IL 121094, ¶ 31. Consequently, "[t]he Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002); *Relerford*, 2017 IL 121094, ¶ 31.

¶ 31    Yet the United States Supreme Court has recognized that certain traditional categories of expression do not fall within the protections of the first amendment, and content-based restrictions as to those recognized categories of speech have been upheld. *Stevens*, 559 U.S. at 468. Those accepted categories of unprotected speech include true threats, which may be banned without infringing on first amendment protections. *United States v. Alvarez*, 567 U.S. 709, 717 (2012); *Stevens*, 559 U.S. at 468; *Watts v. United States*, 394 U.S. 705, 708 (1969) (*per curiam*); see also *Relerford*, 2017 IL 121094, ¶ 33; *Bailey*, 167 Ill. 2d at 227-28.

¶ 32    Where a statute criminalizes a form of pure speech, it must be interpreted "with the commands of the First Amendment clearly in mind." *Watts*, 394 U.S. at 707. Therefore, "[w]hat is a threat must be distinguished from what is constitutionally protected speech." *Id.*

¶ 33    The Supreme Court has held that " '[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (citing *Watts*, 394 U.S. at 708). "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.' " *Id.* at 359-60 (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 388 (1992)).

¶ 34    Defendant acknowledges that the government may restrict the content of speech in certain limited areas, including the recognized exception for true threats. He maintains, however, that the amended stalking statute is unconstitutionally overbroad because the "threatens" provision sweeps in protected speech that expresses an intent to engage in lawful, nonviolent behavior. Therefore, we construe the term "threatens" in subsection (c)(1) to determine whether it unconstitutionally infringes on the boundaries of the first amendment. More to the point, we must determine whether the term "threatens" falls within the category of "true threats" that are not protected by the first amendment.

¶ 35    In general, statutes are presumed constitutional, and the party challenging the constitutionality of a statute carries the burden of establishing that the statute is unconstitutional. *Minnis*, 2016 IL 119563, ¶ 21. This court has a duty to construe the statute in a manner that upholds its validity and constitutionality if reasonably possible. *Id.*; *Bailey*, 167 Ill. 2d at 225. The determination of whether a statute is constitutional is a question of law to be reviewed *de novo*. *Minnis*, 2016 IL 119563, ¶ 21.

¶ 36    The primary objective in construing a statute is to ascertain and give effect to the legislature's intent, bearing in mind that the most reliable indicator of that intent is the statutory language, given its plain and ordinary meaning. *People v. Casas*, 2017 IL 120797, ¶ 18. A reviewing court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. *Id.* In addition, it is appropriate for the court to consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.* Moreover, where a word is used in different sections of the same statute, the presumption is that the word is used with the same meaning throughout the statute, unless a contrary legislative intent is clearly expressed. *People v. Maggette*, 195 Ill. 2d 336, 349 (2001) (citing *People ex rel. Scott v. Schwulst Building Center, Inc.*, 89 Ill. 2d 365, 371 (1982)); see also *People v. Lutz*, 73 Ill.

2d 204, 212 (1978); *Moran v. Katsinas*, 16 Ill. 2d 169, 174 (1959).

¶ 37                                    1. Unlawful Conduct

¶ 38    Defendant claims that the plain meaning of the term "threatens" in subsection (c)(1) is not limited to unlawful violence and, therefore, sweeps beyond the first amendment exception for true threats. The State counters that the term "threatens" as used in subsection (c)(1) is consistent and coextensive with the exception for true threats.

¶ 39    Both defendant and the State rely on various dictionary definitions of the terms "threat" and "threatens" to support their respective positions. Defendant cites definitions that refer to an expression of intent to do something undesirable or to take some other hostile action as a means of retribution. The State conversely cites definitions that refer to an expression of intent to inflict evil, injury, or damage. Given that these divergent definitions can be read to support both positions, they are not dispositive of the question presented here.

¶ 40    According to defendant, any course of conduct that threatens economic or emotional injuries will suffice as a predicate for stalking. Defendant maintains that, because the legislature broadened the scope of behavior prohibited by the amended statute, the term "threatens" cannot be interpreted to include only a threat of bodily harm, sexual assault, confinement, or restraint, as set forth in section (a-3). In support, defendant relies on our appellate court's recent decision in *People v. Morocho*, 2019 IL App (1st) 153232, which held that subsection (a)(2) is overbroad on its face and unconstitutional because it criminalizes speech that threatens lawful action unrelated to violence where the speaker knows or should know that the threats would cause a reasonable person to suffer emotional distress. See *id.* ¶¶ 36-37, 40, 44, 48-49.

¶ 41    In addressing defendant's argument, we construe the term "threatens" in the context of the stalking statute as a whole and considering the legislative intent and the purpose sought to be achieved. See *Casas*, 2017 IL 120797, ¶ 18. In addition, we are mindful of our obligation to construe the statute as constitutional if possible. See *Minnis*, 2016 IL 119563, ¶ 21; *Bailey*, 167 Ill. 2d at 225.

¶ 42    As this court has observed, the intent of the legislature in enacting the stalking statute was "to prevent violent attacks by allowing the police to act before the victim was actually injured and to prevent the terror produced by harassing actions." *Bailey*, 167 Ill. 2d at 224. Based on those considerations, we held that the stalking statute must be construed to proscribe only unlawful conduct, even though that condition was not expressly included in its language at the time. *Id.*

¶ 43    When the 2010 amendments were adopted, the prior version of the stalking statute was renumbered as section (a-3) and criminalized threats of bodily harm, sexual assault, confinement, or restraint committed along with two incidents of following or monitoring of the victim. 720 ILCS 5/12-7.3(a-3) (West 2010). Section (a-5) also included bodily harm, sexual assault, confinement, or restraint in defining a subsequent offense of stalking based on similar conduct. *Id.* § 12-7.3(a-5). Thus, the General Assembly was aware that the prohibition against two or more threats issued in conjunction with following or monitoring of the victim specifically referred to unlawful and violent behavior.

¶ 44    The 2010 amendments expanded the scope of the stalking statute by updating its language to include "all technologies that stalkers use to track and harass their victims." 96th Ill. Gen.

Assem., Senate Proceedings, May 21, 2009, at 125 (statements of Senator Hutchinson). In addition, the amendments were intended to further protect stalking victims and enhance the ability of law enforcement to intercede before the threatening speech or conduct escalates to physical harm or death. *Id.*

¶ 45 When considered within the context of the entire statute, we construe the term "threatens" to be consistent with the word "threat" in subsections (a-3) and (a-5), which target threats of bodily harm, sexual assault, confinement, or restraint. 720 ILCS 5/12-7.3(a-3), (a-5) (West 2010). Given the nature and purpose of the statute and the legislative goals underlying the 2010 amendments, we determine that "threatens" refers to unlawful violence of the type specified in sections (a-3) and (a-5). See *Maggette*, 195 Ill. 2d at 349 (holding that, where language is used in different sections of the same legislative act, the terms have the same meaning throughout the statute, unless contrary legislative intent is clearly expressed). Neither the statutory language nor the legislative history demonstrates a clearly expressed intent that the term "threatens" in subsection (c)(1) should be construed differently from other provisions of the statute.

¶ 46 In adopting the 2010 amendments, the General Assembly expressed a dual interest in avoiding harassment through the use of new technologies and in preventing conduct that precedes violent attacks. Construing the term "threatens" as referring to true threats of unlawful violence gives effect to those legislative goals and is in accord with our obligation to construe a statute so as to uphold its constitutionality where reasonably possible. See *Minnis*, 2016 IL 119563, ¶ 21; *Bailey*, 167 Ill. 2d at 225.

¶ 47 Accordingly, we conclude that the legislature intended that the term "threatens" in subsection (c)(1) refers to "true threats" of unlawful violence such as bodily harm, sexual assault, confinement, and restraint, as set forth in subsections (a-3) and (a-5). As such, the term "threatens" falls outside the protection of the first amendment. Therefore, we reject defendant's claim that subsection (c)(1) is unconstitutionally overbroad because it criminalizes protected speech consisting of threats to engage in lawful, nonviolent behavior. To the extent that the appellate court's decision in *Morocho* is inconsistent with our reasoning, it is overruled.

¶ 48                                     2. Mental State
¶ 49                          a. Intentional and Knowing Behavior

¶ 50 Defendant next asserts that the "threatens" provision of the amended stalking statute is unconstitutionally overbroad because it does not include the requisite mental state for a "true threat." Placing significant reliance on the Supreme Court's decision in *Black*, defendant asserts that the amended statute exceeds the scope of a true threat because it fails to require that the accused act with the specific intent to threaten the victim. We do not agree.

¶ 51 As set forth above, the Supreme Court explained in *Black* that " '[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. Although the Supreme Court employed the phrase "means to communicate" in defining the nature of a true threat, it did not identify any specific mental state that would permit the restriction of such speech without impinging on first amendment protections.

¶ 52 After *Black* was decided, certain federal courts of appeals addressed that question and reached divergent conclusions. Compare *United States v. Cassel*, 408 F.3d 622, 633 (9th Cir.

2005) (interpreting *Black* as requiring proof that the accused subjectively intended the communication as a threat), with *United States v. Fuller*, 387 F.3d 643, 646 (7th Cir. 2004) (adopting an objective standard to hold that a communication is a true threat if a reasonable person would foresee that the communication would be interpreted as a threat).

¶ 53    The Supreme Court offered some guidance with its decision in *Elonis v. United States*, 575 U.S. ___, 135 S. Ct. 2001 (2015). In *Elonis*, the defendant was convicted of violating a federal statute prohibiting the transmission, in interstate commerce, of a threat to injure the person of another. *Id.* at ___, 135 S. Ct. at 2004 (citing 18 U.S.C. § 875(c) (2006)). The legal issue that brought the case before the Court was whether a jury instruction defining a "true threat" was improper because it permitted a finding of guilt based on the jury's conclusion that " 'a reasonable person would foresee that the statement would be interpreted as a serious expression of an intention to inflict bodily injury or to take the life of an individual.' " *Id.* at ___, 135 S. Ct. at 2007.

¶ 54    The Supreme Court identified the question presented as "whether the [federal threat] statute also requires that the defendant *be aware* of the threatening nature of the communication, and—if not—whether the First Amendment requires such a showing." (Emphasis added.) *Id.* at ___, 135 S. Ct. at 2004. In addressing that question, the Court noted the statute required that a communication containing a threat be transmitted in interstate commerce but it did not specify any mental state with respect to those elements. *Id.* at ___, 135 S. Ct. at 2008. The Court further noted that, where a statute fails to identify any mental state for a criminal offense, federal courts will infer an applicable mental state to differentiate unlawful conduct from otherwise lawful conduct. *Id.* at ___, 135 S. Ct. at 2009-10.

¶ 55    In considering the appropriate mental state to be inferred, the Court recognized that federal courts are reluctant to infer a negligence standard in criminal statutes. *Id.* at ___, 135 S. Ct. at 2011. The Court reasoned that the threat statute at issue requires that the defendant know that his communication contains a threat because " 'wrongdoing must be conscious to be criminal.' " *Id.* at ___, 135 S. Ct. at 2012 (quoting *Morissette v. United States*, 342 U.S. 246, 252 (1952)). The Court concluded that "[t]here is no dispute that the mental state requirement in [the threat statute] is satisfied if the defendant transmits a communication for the purpose of issuing a threat, *or with knowledge* that the communication will be viewed as a threat." (Emphasis added.) *Id.* at ___, 135 S. Ct. at 2012. Based on that conclusion, the Court determined that it was not necessary to consider any first amendment issues. *Id.* at ___, 135 S. Ct. at 2012. Thus, *Elonis* essentially recognized that a statutory ban on true threats satisfies the demands of the first amendment if it requires proof of either specific intent or a knowing mental state. See *People v. Bona*, 2018 IL App (2d) 160581, ¶ 32 (interpreting *Elonis* as implicitly holding that the intentional or knowing mental state would satisfy the minimum requirements of a "true threat"); *People v. Khan*, 2018 IL App (2d) 160724, ¶ 36 (same).

¶ 56    Under the guiding principles set forth in *Black* and *Elonis*, we construe the phrase "means to communicate" as requiring that the accused be consciously aware of the threatening nature of his or her speech, and the awareness requirement can be satisfied by a statutory restriction that requires either an intentional or a knowing mental state. Therefore, the first amendment exception for a "true threat" includes situations where the speaker understands the threatening nature of his or her communication and the import of the words used. See *Elonis*, 575 U.S. at ___, 135 S. Ct. at 2009-12; *Black*, 538 U.S. at 359-60; see also *Carrell v. United States*, 165

A.3d 314, 324-25 (D.C. 2017) (*en banc*); *United States v. LaFontaine*, 847 F.3d 974, 979-80 (8th Cir. 2017). In other words, we hold that the accused must be subjectively aware of the threatening nature of the speech.

¶ 57　　Here, section 12-7.3(a) of the amended statute specifically includes the knowing mental state in defining the offense of stalking. 720 ILCS 5/12-7.3(a) (West 2014). Also, section 4-5 of the Criminal Code of 2012 sets forth the mental state of "knowledge" and provides, in relevant part, as follows:

> "A person knows, or acts knowingly or with knowledge of:
>
> > (a) [t]he nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is *consciously aware* that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists.
> >
> > (b) [t]he result of his or her conduct, described by the statute defining the offense, when he or she is *consciously aware* that that result is practically certain to be caused by his conduct." (Emphases added.) *Id.* § 4-5.

These statutory provisions are consistent with the *Elonis* Court's recognition that the mental state requirement for communicating a true threat is satisfied if "the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis*, 575 U.S. at ___, 135 S. Ct. at 2012. Accordingly, we conclude that the true threat exception under the first amendment does not mandate that the accused specifically intend to threaten the victim and a statutory ban on threats that requires knowing conduct is not unconstitutionally overbroad.

¶ 58　　Arguing for a contrary result, defendant places significant reliance on the statement in *Black* that "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." See *Black*, 538 U.S. at 360. We note, however, that defendant's argument misconstrues the import of *Black*. The quoted language pertained to a specific statute that penalized cross burning "with an intent to intimidate a person or group of persons." See *id.* at 347. Thus, the statement on which defendant relies did not relate to all true threats. Therefore, we reject defendant's claim that specific intent to threaten the victim is necessary for a true threat.

¶ 59　　Defendant also relies on *People v. Goodwin*, 2018 IL App (1st) 152045, ¶ 38, *People v. Wood*, 2017 IL App (1st) 143135, ¶ 13, and *People v. Dye*, 2015 IL App (4th) 130799, ¶ 10, all of which held that a "true threat" requires intentional conduct by the defendant. We find defendant's reliance on these cases is misplaced, where they have improperly expanded the holding in *Black* and failed to fully consider the reasoning expressed in *Elonis*.

¶ 60　　　　　　　　b. Unintentional Behavior and the Negligence Standard

¶ 61　　Defendant also contends that the amended stalking statute is unconstitutionally overbroad where it allows conviction of a speaker who negligently conveys a message that a reasonable person would understand as threatening. According to defendant, the prohibition of speech that the defendant "should know" a reasonable person would interpret as a threat unconstitutionally chills protected speech.

¶ 62    As previously noted, the offense of stalking includes circumstances in which the accused "*should know*" that his or her speech would cause a reasonable person to fear for personal safety or suffer other emotional distress. (Emphasis added.) 720 ILCS 5/12-7.3(a) (West 2014). Although we held in *Relerford* that negligence may be an appropriate mental state for imposition of criminal liability (*Relerford*, 2017 IL 121094, ¶ 22), the question presented here is whether negligence is sufficient to satisfy the elements necessary for the first amendment exception for a true threat. Because *Relerford* was limited to the "communicates to or about" portion of the statute, we were not required to, nor did we, determine whether the negligent mental state may be applied to a charge of stalking based on a true threat. See *id.* ¶¶ 38-39.

¶ 63    In addressing defendant's argument, we observe that the Criminal Code of 2012 defines criminal "negligence" as the "fail[ure] to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, described by the statute defining the offense, and that failure constitutes a substantial deviation from the standard of care that a reasonable person would exercise in the situation." 720 ILCS 5/4-7 (West 2014). Given our holding that the term "threatens" refers to a true threat, which requires proof that the accused be consciously aware of the threatening nature of the speech, a mental state that does not require such awareness will not suffice. Therefore, we conclude the negligent mental state of "should know" in section 12-7.3(a) does not satisfy that standard. This conclusion is supported by *Elonis*, which rejected the government's argument that the criminal negligence standard could be inferred with regard to the federal threat statute at issue in that case. See *Elonis*, 575 U.S. at ___, 135 S. Ct. at 2011-12.

¶ 64    Application of the negligence standard would permit prosecution for protected speech that does not constitute a true threat. Accordingly, we hold that the "should know" portion of subsection (a) is overly broad and cannot be constitutionally applied with regard to a course of conduct that "threatens."

¶ 65                    3. Reasonable-Person Standard Applied to the Victim

¶ 66    Defendant further claims that subsection (a)(2) is unconstitutionally overbroad because it imposes an objective reasonable-person standard with respect to the impact of the threatening speech on the recipient. We disagree.

¶ 67    First, we observe that neither *Black* nor *Elonis* explicitly rejected a "reasonable recipient" standard as wholly incorrect or irrelevant in determining whether speech constitutes a true threat. For its part, *Black* specifically recognized that "a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders.' " *Black*, 538 U.S. at 360 (quoting *R.A.V.*, 505 U.S. at 388). As such, the true threat exception is premised on the negative effects suffered by the recipient. Consequently, the assessment of whether speech constitutes a true threat mandates that the court consider the effect on the listener. The analysis in *Elonis* focused on the issue of which culpable mental state could be applied in a prosecution under a federal threat statute and concluded that criminal liability cannot be predicated *solely* on how the defendant's speech would be understood by a reasonable person. *Elonis*, 575 U.S. at ___, 135 S. Ct. at 2011-12.

¶ 68    In addition, we note that application of the objective standard regarding the effect of criminal conduct on the victim is not unusual. See 720 ILCS 5/12-1(a) (West 2014) (providing that "[a] person commits an assault when, without lawful authority, he or she knowingly

- 12 -

engaged in conduct which places another in reasonable apprehension of receiving a battery"). Also, the reasonable person standard is employed in section (a-3) of the stalking statute, which defendant has conceded is constitutional. *Id.* § 12.7.3(a-3) (imposing criminal liability where the accused places the victim "in reasonable apprehension" of unlawful violence); *see also United States v. Elonis*, 841 F.3d 589, 596-97 (3d Cir. 2016) (holding, on remand from the Supreme Court, that the government must satisfy an objective component requiring proof that the defendant transmitted a communication that a reasonable person would view as a threat); *United States v. Dillard*, 795 F.3d 1191, 1201-02 (10th Cir. 2015) (recognizing that a true threat may be proven where a reasonable recipient would conclude that the communication contained a threat of violence). Accordingly, we find that application of the reasonable-person standard as to the harm caused by a true threat is not unconstitutionally overbroad.

¶ 69                                    4. Adequately Tailored

¶ 70        Defendant finally asserts that, even if the term "threatens" is construed as a "true threat," the amended stalking statute unconstitutionally violates the first amendment because it is not limited to campaigns of stalking that escalate to bodily harm or death. In support, he relies on the Supreme Court's decision in *R.A.V.*, which held that an ordinance banning hate speech violated the first amendment despite the fact that it reached only "fighting words." See *R.A.V.*, 505 U.S. at 381. Defendant's argument is without merit.

¶ 71        In *R.A.V.*, the Supreme Court explained that the recognized categories of speech that fall outside the protection of the first amendment may not serve as "vehicles for content discrimination unrelated to their distinctively proscribable content." *Id.* at 383-84. The Court further explained that the first amendment does not allow the government to "impose special prohibitions on those speakers who express views on disfavored subjects." *Id.* at 391. The Court reasoned that the ordinance at issue was facially unconstitutional because it was a content-based restriction that prohibited only "fighting words" that "insult, or provoke violence, 'on the basis of race, color, creed, religion or gender.' " *Id.* (quoting *In re Welfare of R.A.V.*, 464 N.W.2d 507, 508 (Minn. 1991)). As a result, the ordinance operated as "actual viewpoint discrimination." *Id.*

¶ 72        Here, the amended stalking statute proscribes all speech that "threatens," which we have construed as prohibiting only true threats of unlawful violence. See 720 ILCS 5/12-7.3(a), (a-3), (a-5), (c)(1) (West 2014). The prohibition against true threats protects individuals not only from campaigns of stalking that escalate to bodily harm or death but also " 'from the fear of violence' and 'from the disruption that fear engenders.' " *Black*, 538 U.S. at 360 (quoting *R.A.V.*, 505 U.S. at 388). Also, as opposed to the ordinance at issue in *R.A.V.*, the stalking statute does not target only a certain type of true threat or a true threat directed against a particular individual or group of individuals. Rather, the basis for the restriction "consists entirely of the very reason the entire class of speech at issue is proscribable, [and] no significant danger of idea or viewpoint discrimination exists." See *R.A.V.*, 505 U.S. at 388. Accordingly, the statute does not suffer from the same constitutional infirmity recognized in *R.A.V.* Therefore, defendant's reliance on *R.A.V.* is misplaced.

¶ 73        Based on all of the above, we conclude that the term "threatens" in subsection (c)(1) is readily susceptible to a limiting construction. See *Broadrick*, 413 U.S. at 613. We further hold that the provision must be interpreted to refer only to true threats of unlawful violence.

Therefore, the "threatens" provision is not unconstitutionally overbroad in violation of the first amendment.

¶ 74                                    C. Substantive Due Process

¶ 75      Defendant also contends that his conviction for stalking must be reversed because the amended stalking statute is facially unconstitutional in violation of his right to substantive due process. See U.S. Const., amend. XIV. We do not agree.

¶ 76                                    1. Innocent Conduct

¶ 77      Defendant argues that the "threatens" provision of the amended stalking statute violates substantive due process because it criminalizes a vast amount of innocent conduct that is unrelated to the statute's narrow purpose, which the legislature could not have intended to fall within its proscriptions. According to defendant, almost any knowingly or negligently distressing conduct is a felony where the statute does not differentiate between lawful and unlawful conduct.

¶ 78      Criminal statutes that potentially punish innocent conduct not related to the statute's purpose violate the principles of due process. *People v. Madrigal*, 241 Ill. 2d 463, 469 (2011) (citing *People v. Wright*, 194 Ill. 2d 1, 25 (2000)). Therefore, substantive due process requires that the proscriptions of a criminal statute be clearly defined. *People v. Maness*, 191 Ill. 2d 478, 483-84 (2000). To satisfy this requirement, a criminal statute must be sufficiently definite so that it gives persons of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); *Grayned*, 408 U.S. at 108; see also *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 442 (1998).

¶ 79      Defendant's claim that the statute violates substantive due process because it sweeps in innocent conduct parallels his first amendment overbreadth argument, which we have previously addressed and rejected. In light of our holding that the "threatens" provision relates only to intentionally or knowingly conveyed true threats of unlawful violence, that provision cannot be deemed as encompassing innocent conduct. See *Black*, 538 U.S. at 359-60. Consequently, defendant's assertion that the statute does not differentiate between lawful and unlawful conduct necessarily fails. See generally *People v. Crawford*, 2019 IL App (1st) 160184, ¶ 39 (construing a similar provision in the cyberstalking statute).

¶ 80      Moreover, contrary to defendant's assertion, the conduct criminalized by the statute is directly related to the General Assembly's goal in adopting the 2010 amendments. The prohibition against a course of conduct consisting of two or more true threats of unlawful violence implements the legislature's intent to prevent the type of conduct that precedes violent attacks against stalking victims. As such, it proscribes only speech that engenders fear for personal safety and seeks to preclude conduct that historically has led to homicide. See 96th Ill. Gen. Assem., Senate Proceedings, May 21, 2009, at 125 (statements of Senator Hutchinson). Accordingly, we reject defendant's claim that the "threatens" provision is unrelated to the statute's narrow purpose.

¶ 81                              2. Vagueness and Arbitrary Enforcement

¶ 82        Defendant further claims that the amended stalking statute violates substantive due process because the "threatens" provision of the statute fails to distinguish between conduct that is subject to prosecution and conduct that is not. We disagree.

¶ 83        A constitutional challenge based on vagueness is predicated on the notice requirement of the due process clause. *Grayned*, 408 U.S. at 108; *Wilson v. County of Cook*, 2012 IL 112026, ¶ 21. Therefore, a statute may be challenged as vague on either of two grounds: (1) it fails to give fair warning to allow innocent people to steer clear of its prohibitions or (2) it contains insufficiently clear standards for those who enforce it and may lead to arbitrary or discriminatory enforcement. *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Grayned*, 408 U.S. at 108-09; *Wilson*, 2012 IL 112026, ¶ 21. In addition, a statute is not vague if judicial construction renders it sufficiently definite to avoid arbitrary or discriminatory enforcement. *People v. Einoder*, 209 Ill. 2d 443, 450-51 (2004); *People v. Taylor*, 2019 IL App (1st) 160173, ¶ 32.

¶ 84        Also, a due process challenge based on vagueness can succeed only where the statutory provision is impermissibly vague in all of its applications. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982). Therefore, the determination of whether a statute is unconstitutionally vague must be decided on the particular facts before the court, and a litigant whose speech is clearly proscribed cannot successfully assert a due process claim of vagueness for lack of notice. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-20 (2010).

¶ 85        Applying these principles here, we conclude that defendant's claim of unconstitutional vagueness must be rejected. Given that the "threatens" provision relates only to intentionally or knowingly conveyed true threats of unlawful violence, the statute affords fair warning that allows innocent people to know what is prohibited so they can tailor their conduct accordingly. See *Morales*, 527 U.S. at 56; *Grayned*, 408 U.S. at 108. In addition, the prohibition against true threats provides sufficiently clear standards to avoid arbitrary or discriminatory enforcement. *Hill*, 530 U.S. at 732; *Grayned*, 408 U.S. at 108-09. Further, aside from his general concerns of overbreadth, which we have addressed and rejected, defendant does not identify any other term or condition of the statute that is vague or inherently unclear.


¶ 86                          3. Sufficiency of Harm Based on Emotional Distress

¶ 87        Defendant also contends that the amended stalking statute is facially unconstitutional in violation of due process where it does not mandate that the victim fear for his or her personal safety. According to defendant, the prohibition against speech that causes emotional distress is not narrowly tailored to the legislature's goal of preventing conduct that may escalate to physical harm or death. Defendant also maintains that speech that is merely distressing, which is not actionable under tort principles, does not justify the imposition of criminal liability. This contention is unpersuasive.

¶ 88        As we have previously determined, the "threatens" provision of the amended stalking statute relates only to true threats of unlawful violence such as bodily harm, sexual assault, confinement, or restraint. Fear for personal safety by the victim is inherent in an offense based on the communication of a true threat, and fear for personal safety necessarily includes emotional distress.

¶ 89 Also, the amended stalking statute defines "emotional distress" as "significant mental suffering, anxiety or alarm." 720 ILCS 5/12-7.3(c)(3) (West 2014). Given that definition, we find that the ban on true threats criminalizes only speech that is integrally related to the General Assembly's goal of preventing conduct that may escalate to bodily harm or death. See *R.A.V.*, 505 U.S. at 388 (recognizing that a prohibition on true threats "protect[s] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur"); see also *People v. Sucic*, 401 Ill. App. 3d 492, 505 (2010) (construing the terms "emotional distress" and "mental anguish" in the cyberstalking statute).

¶ 90 Defendant further claims that subsection (a) violates substantive due process because the resulting fear or emotional distress is measured by the reasonable-person standard and not the impact on the actual victim. We reject this assertion for the reasons expressed above in finding that the reasonable-person standard is not facially overbroad.

¶ 91                    4. Claims Regarding Other Conduct Prohibited by the Statute

¶ 92 Finally, defendant argues that the stalking statute violates due process on the ground that it permits prosecution for other lawful conduct that does not fall within the "threatens" provision in subsection (c)(1). In support, defendant posits several hypothetical examples of conduct that he claims would be subject to prosecution under the amended statute. Those examples involve lawful, nonviolent conduct such as monitoring, surveillance, or distressing speech that does not consist of a threat of unlawful violence. This argument is predicated on a misconstruction of the purpose and scope of the overbreadth doctrine that is applicable to first amendment challenges.

¶ 93 Although a first amendment claim may be based on the speech of others who are not before the court, there is no similar doctrine that excuses standing to bring a constitutional challenge premised on due process. See *Holder*, 561 U.S. at 18-20. Therefore, outside the limited context of the first amendment, a party who challenges a statute on the ground that it violates due process must have standing to do so. *People v. Ryan*, 117 Ill. 2d 28, 33 (1987) (citing *Schall v. Martin*, 467 U.S. 253, 268 n.18, (1984)).

¶ 94 Standing requires that the defendant's conviction in some way results from the allegedly unconstitutional aspect of the statute. *Minnis*, 2016 IL 119563, ¶ 13 (citing *In re M.I.*, 2013 IL 113776, ¶¶ 32, 34). Generally, a party may not raise, and a court will not consider, a constitutional challenge to a statutory provision that does not affect that party. *Id.*; see also *People v. Terrell*, 132 Ill. 2d 178, 211-12 (1989) (holding that "[a] person lacks standing to challenge the constitutionality of a statute unless he is directly affected by the alleged unconstitutionality" (citing *People v. Haywood*, 118 Ill. 2d 263, 275 (1987))). "This traditional rule reflects two cardinal principles: the personal nature of constitutional rights and prudential limitations on constitutional adjudication." *Minnis*, 2016 IL 119563, ¶ 13 (citing *Broadrick*, 413 U.S. at 610-11).

¶ 95 Here, defendant was not found guilty of monitoring Tinch, placing her under surveillance, or for expressing speech that was merely distressing. Because defendant's conviction was not premised on the type of conduct referenced in his examples, he lacks standing to challenge the constitutionality of the stalking statute on those grounds. Consequently, we decline to address whether the stalking statute would violate due process if applied to the conduct or speech described in defendant's hypothetical examples. *People v. Rogers*, 133 Ill. 2d 1, 9 (1989)

(recognizing that " 'courts will not entertain objections to an allegedly unconstitutional feature where the objecting party is not in any way aggrieved' " (quoting *City of Chicago v. Lawrence*, 42 Ill. 2d 461, 464 (1969))).

¶ 96    For all of the reasons explained above, defendant's argument that his conviction must be reversed on due process grounds necessarily fails.

¶ 97                    D. Defendant's Conviction Is Not Unconstitutional

¶ 98    Having construed the "threatens" provision as referring to a true threat of unlawful violence to which the subjective mental state applies, we next consider whether defendant's conviction can stand. See *Pope v. Illinois*, 481 U.S. 497, 502-03 (1987); *Chapman v. California*, 386 U.S. 18, 23-24 (1967). As set forth above, the State presented evidence that defendant "knowingly engaged in a 'course of conduct' " by threatening Tinch and her family members with unlawful violence and that he knew this "course of conduct" would cause a reasonable person to fear for his or her safety and suffer emotional distress. 720 ILCS 5/12-7.3(a)(2), (c)(1) (West 2014).

¶ 99    In particular, the State presented evidence that defendant sent numerous text messages that included threatening language directed at Tinch and constituted "serious expression[s] of an intent to commit an act of unlawful violence" toward her. See *Black*, 538 U.S. at 539. Specifically, defendant sent Tinch messages stating "I can make you suffer"; "start to think more before u talk that s*** will get you hurt or killed"; "where the f*** are u Cause rode past in seen lights on there"; "You got my blood boiling"; "I swear b*** if a n*** there its g[o]ing to be one"; "U them f*** up"; "I hope whoever you got it when I got guns"; "So u called the law." Defendant also sent Tinch a photograph of a gun. Tinch testified that those text messages "scared" and "terrified" her.

¶ 100    In addition, Tinch and her mother testified that, while Tinch's cell phone was on speaker mode, they heard defendant threaten to come over and kill Tinch. The testimony of Tinch's mother also established that defendant had threatened to "kill everyone with a banger." Both women were so concerned that they and all the other family members who were present immediately left Tinch's apartment and went to her mother's residence. Furthermore, the police were called while they were in transit. Thus, the behavior of Tinch and her mother demonstrated their reasonable apprehension with regard to defendant's threatened behavior.

¶ 101    Moreover, after the police were contacted, an officer met them at Miller's residence, and another officer was dispatched to the area near Tinch's apartment where defendant was apprehended. Thus, the evidence discloses that defendant made a threatening phone call to Tinch, which caused her to fear for her safety, and that she and her mother feared for the safety of their family members. The police took the threats seriously and responded to two separate locations, and defendant was aware that the police had been contacted. Based on this evidence, the trial court found that Tinch was in fear of defendant and that he acted with both knowledge and intent to cause her emotional distress by making several statements, some of which threatened death or other bodily harm. In light of the trial court's factual findings, the record affirmatively establishes that defendant's conviction did not rest on the invalid or overly broad portions of the stalking statute. Therefore, the State has shown beyond a reasonable doubt that the breadth of the statute under which defendant was tried did not contribute to his finding of guilt. Accordingly, defendant's conviction is affirmed.

## III. CONCLUSION

¶ 103 In sum, we hold that the term "threatens" as used in subsection (c)(1) of the stalking statute refers to intentional or knowing threats of unlawful violence that the accused knows would cause a reasonable person to suffer significant mental suffering, anxiety, or alarm. Given that such threats constitute true threats, they are not protected by the right to free speech and may be prohibited without violating the first amendment.

¶ 104 In addition, we hold that the prohibition against speech that "threatens," where the accused "should know" the threat would cause a reasonable person to suffer significant mental suffering, anxiety, or alarm, does not constitute a true threat and is unconstitutionally overbroad in violation of the first amendment.

¶ 105 We further hold that the prohibition against speech that "threatens" does not violate due process, and defendant lacks standing to challenge other portions of the stalking statute on due process grounds.

¶ 106 We do not decide the constitutional validity of the prohibition against conduct that does not involve true threats, and we similarly express no opinion as to the constitutionality of the mental state requirements for such conduct.

¶ 107 Finally, we conclude that defendant's conviction for stalking did not rest on the invalid or overly broad portions of the stalking statute. For the foregoing reasons, the judgment of the appellate court, affirming defendant's conviction, is affirmed.

¶ 108 Affirmed.