NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210084-U

NO. 4-21-0084

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 22, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| JOHN O. PENN, | ) | No. 19CF1020 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert K. Adrian, |
| | ) | Judge Presiding. |

_____

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed and remanded for a new discharge hearing,
concluding trial counsel provided ineffective assistance of counsel where she
failed to (1) request a sanity evaluation of defendant and (2) raise the affirmative
defense of insanity before the discharge hearing.

¶ 2    Defendant, John O. Penn, appeals from the trial court's judgment finding him not

not guilty of (1) threatening a public official (720 ILCS 5/12-9 (West 2018)), (2) aggravated

assault (720 ILCS 5/12-2(b)(4.1)(ii) (West 2018)), and (3) resisting a peace officer (720 ILCS

5/31-1(a) (West 2018)).  On appeal, defendant argues (1) the State failed to prove beyond a

reasonable doubt that he intended to communicate a threat of unlawful violence to police officers

and (2) ineffective assistance where his counsel failed to (a) request a sanity evaluation of

defendant and (b) raise the affirmative defense of insanity before the discharge hearing.  We

reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4        On January 2, 2020, an Adams County grand jury returned a bill of indictment

charging defendant with (1) threatening a public official (720 ILCS 5/12-9 (West 2018)),

(2) aggravated assault (720 ILCS 5/12-2(b)(4.1)(ii) (West 2018)), and (3) resisting a peace

officer (720 ILCS 5/31-1(a) (West 2018)).  The charges stemmed from an incident on December

25, 2019, where defendant interacted with two police officers and "stated to Officer Katie

Dolbeare and Officer Megan Dolbeare that he would kill them, shoot them, and hit them."

¶ 5        During pretrial hearings, defendant made numerous indiscernible comments, and

on at least two occasions, defendant had outbursts which resulted in his removal from the

hearing.  On January 6, 2020, defense counsel filed a suggestion of fitness and motion for

examination.  In the motion, defense counsel stated, "Counsel has met with Defendant in person

and as a result of these conversations has grave concern as to whether the defendant has [the]

ability to assist counsel in preparation of her defense."  At a January 15, 2020, hearing on the

motion for fitness examination, defendant stated, "I—I think I'm fit.  It's just a misunderstanding

of the—my door."  The trial court granted counsel's request for a fitness evaluation.

¶ 6                                A.  Fitness Evaluation

¶ 7        On January 16, 2020, clinical psychologist Frank Froman, Ed.D., conducted a

psychological evaluation of defendant and created a psychological report based on his findings.

According to the report, defendant lived in a hotel before his incarceration, and he told Dr.

Froman, "I got locked out at two in the morning, had problems, got arrested, and now I'm in

jail."  Defendant indicated he had "kids," but he could not remember how many.  Defendant also

informed Dr. Froman that he used to take a variety of psychiatric medication but he had not

taken any for some time.  Defendant indicated he was a former patient at Transitions.  Defendant

also admitted to five or six psychiatric admissions over his life, but he told Dr. Froman, "I don't know why." Defendant struggled with sleep, and he told Dr. Froman, "I try to stay awake as long as I can." Defendant also alleged he was an electrical engineer, but he failed to understand basic vocabulary related to engineering.

¶ 8        Dr. Froman noted defendant's "presentation was problematic. He tended to 'over-talk' the examiner, and also tended to present materials over and over again, never seeming to be satisfied by one presentation, repeating again and again the same things." Dr. Froman provided, "It was very difficult to get him to truly focus on the intent of the question, and he seemed to have the very strong need to 'tell long stories.' " As to the December 25, 2019, incident, defendant told Dr. Froman "a convoluted, and impossible to understand story about what happened, about the police coming, and about them arresting him. He was never able to identify exactly why they did that."

¶ 9        During his mental status examination, defendant knew basic information like the date and current president. However, defendant was "unaware of any recent news." Defendant also did not know the identity of his public defender, and when Dr. Froman tried to go through defendant's understanding of his rights, Dr. Froman stopped at " 'you have a right to remain silent,' since [defendant] had difficulty fully comprehending it."

¶ 10        Dr. Froman stated defendant appeared "hypomanic, easily confused, easily overwhelmed, and has great difficulty focusing on relatively clear questions." Dr. Froman also determined defendant showed "evidence of a true bipolar disorder." Dr. Froman provided defendant "is now in a state of significant confusion. In this state, he should not be viewed as 'competent to stand trial.' " Specifically, Dr. Froman stated, "Currently, I do not see him as trial ready, not able to cooperate effectively with his attorney, therefore, do not find him fit. He

should be able to be stabilized within 30 days of treatment from Transitions if they will see him again."

¶ 11                                   B.  Fitness Hearing

¶ 12            On February 13, 2020, the trial court held a fitness hearing.  At the hearing, the State argued Dr. Froman's report was clear that defendant was not competent to stand trial at the present time.  The State recommended the court order defendant to the Illinois Department of Human Services (IDHS) for "treatment to try to make him fit."  Defense counsel stated, "Your Honor, I'm in agreement.  I believe he is not currently fit.  It appears Dr. Froman believes he can be made fit, but at this point in time, he is not."  Accordingly, the court found defendant unfit to stand trial at the present time and referred defendant to IDHS for treatment "until he is found to be fit."  Subsequently, IDHS admitted defendant to Alton Mental Health Center.

¶ 13                              C.  Fitness Progress Reports

¶ 14            IDHS generated and filed 90-day fitness to stand trial progress reports which detailed defendant's mental state.  In a July 27, 2020, fitness report, the treating psychiatrist described defendant's primary diagnosis as "Schizoaffective Disorder, Bipolar Type."  As to defendant's current mental status, the report stated, "[Defendant] perseverates on the wrongs he perceives being done to him in the recent charges and in past legal issues and verbalizes multiple persecutory delusions regarding various police departments and courts.  He exhibits manic symptoms such as dancing around his room all night and preaching from his bible loudly at all hours."  The report further provided defendant's "insight and judgment remain poor."  The report indicated defendant's "symptoms would prevent him from working with his attorney in a courtroom setting in [a] calm, cooperative[,] and appropriate manner."  The treating psychiatrist

- 4 -

concluded defendant was unfit to stand trial but that he was likely to attain fitness within the statutory time period of one year.

¶ 15    In an October 27, 2020, fitness report, the treating psychiatrist indicated defendant took psychotropic medication and participated in treatment. The report provided that when discussing the topic of legal charges or court proceedings, defendant exhibited "sporadic and unpredictable outbursts of agitation, paranoia, and verbal aggression." Defendant "often reverts back to stating that he does not have charges and that the court and the treatment team are trying to conspire against him and hold him illegally." The treating psychiatrist concluded defendant was unfit to stand trial and he was unlikely to attain fitness within the statutory period of a year from the finding of unfitness.

¶ 16    On December 2, 2020, in response to the finding that defendant was unlikely to attain fitness within the statutory period, defense counsel requested the trial court set the matter for a discharge hearing. The court found defendant remained unfit and there was a substantial probability he would not attain fitness within one year of the finding of unfitness. Subsequently, the court scheduled a discharge hearing.

¶ 17                           D.  Discharge Hearing

¶ 18    On February 5, 2021, the trial court held a discharge hearing. At the hearing, Quincy, Illinois, police officers Megan Dolbeare and Katie Dolbeare testified on behalf of the State. Both officers testified that on December 25, 2019, around 4:30 a.m., they responded to the Welcome Inn in Quincy for "a disturbance for a male that was yelling, cursing, and knocking on doors." Both officers identified defendant as the male at the Welcome Inn and testified they knew defendant from previous contacts. Upon arrival at the Welcome Inn, the officers determined defendant was angry and upset because he had been locked out of his room. The

- 5 -

officers attempted to de-escalate the situation by contacting the property manager and maintenance. However, Officer Megan Dolbeare testified, "Nobody was coming." The officers then tried to contact defendant's emergency contact, but the contact was out of state.

¶ 19 Both officers testified that, while they tried to reach defendant's emergency contact, defendant approached the officers. Officer Megan Dolbeare testified that, when defendant approached them, he "made several threats, and then he spit at us." When defendant spit at the officers he was about four feet away from them. No saliva hit the officers. Officer Megan Dolbeare also testified defendant made several threats toward them, including "[h]e was going to shoot and kill us." Defendant also asked the officers to shoot him and he continued to tell the officers he was going to kill them. At one point, defendant demanded the officers draw their guns on him. Defendant also stated, "You're 'finna [*sic*] get shot, b***." Officer Katie Dolbeare testified defendant said, "I'd like to kill a police officer." Defendant further accused the officers of spitting on him where he stated, "I'll tell you what, spit again, b***. Spit again, mother***. Spit again, spit again." The officers denied spitting on defendant.

¶ 20 Officer Katie Dolbeare testified she and Officer Megan Dolbeare spent about 40 minutes trying to calm defendant down and de-escalate the situation. During that time, the officers did not search defendant and were unaware if he had a gun. However, after defendant spit in the direction of the officers, they attempted to place defendant under arrest. When the officers told defendant he was under arrest and to place his hands behind his back, defendant "stiffened his arms and balled up his fists and kept them at his sides and waist." The officers called for backup. Once a male officer arrived, defendant cooperated, and the officers placed him under arrest. Both Officer Katie Dolbeare and Officer Megan Dolbeare testified that, during

the encounter with defendant, they feared for their safety due to defendant's "anger" and "emotional state."

¶ 21 During cross-examination, defense counsel asked Officer Megan Dolbeare, based on her police experience, whether defendant appeared to be "under the influence of something?" Officer Megan Dolbeare responded, "It appeared that he may have a mental condition. I'm not sure about under the influence." Defense counsel also asked Officer Katie Dolbeare whether she had experience with people who appeared to be "high on something or maybe having some kind of mental problems?" Officer Katie Dolbeare responded in the affirmative. Defense counsel then asked if defendant appeared to be one of those. Officer Katie Dolbeare responded, "I've had several encounters with [defendant], and it seems to be some sort of mental disorder." The State presented no further evidence.

¶ 22 Defense counsel then provided, "I don't believe [defendant] wishes to testify, so I would have no evidence." The trial court then clarified with defense counsel that she had an opportunity to talk with defendant about testifying, and defense counsel responded, "I did speak with him. I—he did not directly answer the question." Defendant interjected, "I know the answer to the question." The court disregarded defendant's interjection and stated, "Then that is all the evidence for today."

¶ 23 The case proceeded to closing arguments. The State asked the trial court to find defendant not not guilty where the evidence showed he was not not guilty pursuant to the relevant statutes. Defense counsel argued,

> "As this Court knows, [defendant] was found unfit, has
> been found not able to be made fit. According to officers, he
> seemed to be suffering under some sort of mental illness at the

time of the arrest. All of the evidence would indicate that he didn't have the ability to form the state of mind to commit the offenses, and so I would ask the Court to acquit him or find him not guilty by reason of insanity."

The State responded that defense counsel's argument should be stricken and not heard by the trial court where defense counsel never pled insanity. Specifically, the State asserted that defense counsel needed to plead the affirmative defense of insanity before the hearing. The State provided, "There's been no argument or factual basis for that, no evidence of that presented to this Court at the hearing." Defense counsel responded, "I did not have that evidence beforehand, but also this is not a trial."

¶ 24    The trial court considered the evidence and arguments and provided that, at the discharge hearing, it could acquit defendant or find him not not guilty. Ultimately, the court found defendant not not guilty of all three counts charged. Specifically, the court stated,

"The Court does not have sufficient evidence that would allow it to acquit the Defendant even if the Court so chose to consider if he was insane or unable to commit these crimes because of reason of insanity. In order to do that, the Court would have to have an expert opinion as to what the Defendant's state of mind was at the time that these offenses were committed. That evidence is not before the Court. So the Court would find, as I stated earlier, that the Defendant is not not guilty. And so he will remain in the custody of IDHS, and that can be for up to [15 months]."

The court ordered defendant to undergo an extended term of treatment with IDHS up to May 12, 2022—15 months from defendant's February 13, 2020, unfitness finding.

¶ 25            This appeal followed.

¶ 26                            II. ANALYSIS

¶ 27            On appeal, defendant argues (1) the State failed to prove beyond a reasonable doubt that he intended to communicate a threat of unlawful violence to police officers and (2) ineffective assistance where his counsel failed to (a) request a sanity evaluation of defendant and (b) raise the affirmative defense of insanity before the discharge hearing.  We review each issue in turn.

¶ 28                        A.  Sufficiency of the Evidence

¶ 29            Defendant argues the State failed to prove beyond a reasonable doubt that he intended or knew his words would be viewed as a threat due to his mental illness and erratic behavior.  The State disagrees and argues it presented sufficient evidence to prove beyond a reasonable doubt that defendant threatened a public official.  We agree with the State.

¶ 30            "A discharge hearing is not a criminal proceeding."  *People v. Mayo*, 2017 IL App (2d) 150390, ¶ 3, 79 N.E.3d 359.  Rather, it is an "innocence only" proceeding that takes place only after a defendant has been found unfit to stand trial, and it determines only whether to enter a judgment of acquittal, not to make a determination of guilt.  *Id.*; *People v. Waid*, 221 Ill. 2d 464, 469-70, 851 N.E.2d 1210, 1213-14 (2006).  "The question of guilt is deferred until the defendant is fit to stand trial."  *Mayo*, 2017 IL App (2d) 150390, ¶ 3.

¶ 31            "At a discharge hearing, the trial court may make one of three findings."  *People v. Manns*, 373 Ill. App. 3d 232, 238, 869 N.E.2d 437, 441 (2007).  First, "the court may acquit the defendant."  *Id.*  Second, "the court may acquit the defendant based on a finding the

defendant is not guilty by reason of insanity." *Id.* Finally, if the evidence presented at a discharge hearing is sufficient to establish that the defendant committed the offense, no conviction results; instead, the defendant is found not not guilty. *Mayo*, 2017 IL App (2d) 150390, ¶ 3. The defendant is then subject to further treatment. *Id.*

¶ 32 Although a finding of not not guilty does not result in a conviction, the standard of proof is the same. *Id.* ¶ 29. Thus, the applicable standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Id.*

¶ 33 To prove beyond a reasonable doubt that defendant threatened a public official, the State had to prove defendant "knowingly and willfully conveyed directly to Officer Katie Dolbeare and Officer Megan Dolbeare, public officials, a communication containing a threat that would place Officer Katie Dolbeare and Officer Megan Dolbeare or a member of their immediate family in reasonable apprehension of immediate or future bodily harm." See 720 ILCS 5/12-9 (West 2018).

¶ 34 "If the State charges an individual with threatening a public official under section 12-9 of the Criminal Code [of 2012] (720 ILCS 5/12-9(a) (West 2014)), the threat of violence must be a 'true threat,' or else the prosecution will violate the first amendment." *People v. Smith*, 2019 IL App (4th) 160641, ¶ 48, 141 N.E.3d 688. " ' "[T]rue threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.' " *People v. Ashley*, 2020 IL 123989, ¶ 51, 162 N.E.3d 200 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). Our supreme court explained that "the phrase 'means to communicate' " requires that a defendant be "consciously aware of the threatening nature of his or her speech, and the

- 10 -

awareness requirement can be satisfied by a statutory restriction that requires either an intentional or a knowing mental state." *Ashley*, 2020 IL 123989, ¶ 56. In other words, "the accused must be subjectively aware of the threatening nature of the speech." *Id.*

¶ 35    When viewing the evidence in the light most favorable to the State, we find the evidence was sufficient to prove defendant knowingly communicated a true threat to Officer Katie Dolbeare and Officer Megan Dolbeare. While the officers attempted to help defendant and de-escalate the situation, defendant tried to spit on the officers and made numerous threats towards the officers. Defendant argues his behavior during the incident did not suggest he intended to threaten the police officers or that he knew his words were threatening. Rather, defendant argues his words were attributable to his mental illness. Defendant provided this was apparent where he operated under the delusion the officers spit on him. We disagree.

¶ 36    Defendant's statements show he was subjectively aware of the threatening nature of his speech where he tailored his statements toward a particular group of individuals—police officers. This is evident where defendant (1) told the officers he was going to shoot and kill them, (2) asked the officers to shoot him while continuing to state he was going to kill them, (3) stated, "You're finna [*sic*] get shot, b***," and (4) stated, "I'd like to kill a police officer." Moreover, defendant tried to induce a reaction from the officers when he demanded the officers draw their guns on him. Defendant's effort to induce a response from the officers demonstrates his subjective awareness of the threatening nature of his speech.

¶ 37    Defendant also challenges the officers' apprehension of immediate harm where he argues the officers' knowledge of his mental illness undermined the reasonableness of their fear of harm. There is no indication in the record that the officers knew of the precise nature or extent of defendant's mental illness. Although both officers testified that they believed

defendant suffered from a mental disorder or condition, they did not testify they knew the nature or extent of that illness. Even if the officers were fully aware of defendant's mental illness, that did not preclude the trial court from finding that defendant's statements were threatening. Moreover, the officers' knowledge that defendant suffered from a mental disorder or condition did not make the officer's apprehension of immediate harm any less reasonable.

¶ 38 Under the circumstances, we conclude the State presented sufficient evidence to prove defendant knowingly communicated a true threat to Officer Katie Dolbeare and Officer Megan Dolbeare. See *id.* Accordingly, the trial court properly found defendant not not guilty of threatening a public official.

¶ 39 B. Ineffective Assistance of Counsel

¶ 40 Last, defendant argues ineffective assistance of counsel where his counsel failed to (a) request a sanity evaluation of defendant and (b) raise the affirmative defense of insanity before the discharge hearing.

¶ 41 We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, defendant must show (1) the attorney's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defendant. *Id.* at 687. Both prongs of the *Strickland* test must be satisfied; therefore, a finding of ineffective assistance of counsel is precluded if a defendant fails to satisfy one of the prongs. *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 42 1. *Deficient Performance*

¶ 43 To satisfy the deficient-performance prong, a defendant "must show that his counsel's performance was so inadequate that counsel was not functioning as the 'counsel'

guaranteed by the sixth amendment." *People v. Smith*, 195 Ill. 2d 179, 188, 745 N.E.2d 1194, 1200 (2000). The defendant also "must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy." *Id.*

¶ 44 Under Illinois law, "[a]ll defendants are presumed sane." *People v. Welling*, 2021 IL App (2d) 170944, ¶ 48. Insanity is an affirmative defense that must be raised by the defendant and he bears the burden of proving the defense by clear and convincing evidence. *Id.* (citing 720 ILCS 5/6-4, 6-2(e) (West 2012)). "A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity to appreciate the criminality of his conduct." *Id.* (citing 720 ILCS 5/6-2(a) (West 2012)).

¶ 45 Defendant argues defense counsel's failure to request a sanity evaluation of defendant and subsequent failure to raise the affirmative defense of insanity before the discharge hearing constituted deficient performance. Defendant asserts the facts of the case, psychological reports, and his behavior during pretrial hearings all suggested defendant did not appreciate the criminality of his conduct at the time of the offense.

¶ 46 Moreover, defendant contends counsel's failure to (1) request a sanity evaluation and (2) raise the affirmative defense of insanity before the discharge hearing cannot be deemed reasonable trial strategy where counsel during closing argument argued that defendant "didn't have the ability to form the state of mind to commit the offenses" and asked the trial court to find defendant not guilty by reason of insanity. We agree with defendant.

¶ 47 Prior to the discharge hearing, defense counsel never requested a sanity evaluation of defendant. At the discharge hearing, while defense counsel cross-examined Officer Katie Dolbeare and Officer Megan Dolbeare about whether defendant suffered from a mental condition at the time of the offense, defense counsel presented no evidence and called no witness. It was

- 13 -

not until closing argument that defense counsel asserted defendant "didn't have the ability to form the state of mind to commit the offenses" and asked the trial court to acquit defendant by reason of insanity. Defense counsel explained she did not raise the affirmative defense of insanity earlier because she did not have the evidence beforehand.

¶ 48 We find the record shows ample evidence to support a request for a sanity evaluation and an investigation into the viability of an insanity defense. "The finding [the] defendant was unfit to stand trial and remained unfit was not proof of insanity at the time of the offense (*People v. Britton*, 119 Ill. App. 2d 110, 113, 255 N.E.2d 211, 212-13 (1970))." *Manns*, 373 Ill. App. 3d at 240. However, defendant's history of psychiatric admissions, the circumstances of the offense testified to by the officers, defendant's behavior during pretrial hearings, and defendant's fitness evaluation demonstrate evidence existed to request a sanity evaluation of defendant and lend support to the defense that defendant was unable to appreciate the criminality of his conduct at the time of the offense. See *id.*

¶ 49 Yet, at the discharge hearing, defense counsel presented no evidence of defendant's state of mind at the time of the offense and only extracted minimal evidence on cross-examination as to whether the officers believed defendant suffered from a mental illness at the time of the offense. Defense counsel could have called Dr. Froman to testify to (1) his observations of defendant during his psychological evaluation of defendant to determine fitness and (2) the report he generated of his findings. In his report, Dr. Froman noted defendant's mental illness history and provided defendant's description of the December 25, 2019, incident. As to the December 25, 2019, incident, defendant told Dr. Froman "a convoluted, and impossible to understand story about what happened, about the police coming, and about them arresting him. He was never able to identify exactly why they did that."

¶ 50       Defense counsel also could have asked Officer Katie Dolbeare and Officer Megan Dolbeare more questions on cross-examination about their prior contacts with defendant and their observations of defendant's behavior during the offense that led them to believe he was mentally ill.  Further, if defense counsel had requested and obtained a sanity evaluation of defendant, she could have presented the findings of the evaluation as evidence at the discharge hearing.  Moreover, if defense counsel retained an expert to evaluate defendant's sanity at the time of the offense, she could have called the expert to testify to his or her findings.

¶ 51       Based on the record, we find defense counsel's performance fell below an objective standard of reasonableness when she failed to (1) request a sanity evaluation and (2) raise the affirmative defense of insanity before the discharge hearing.  We next determine whether defense counsel's deficient performance resulted in prejudice.

¶ 52                              2. *Prejudice*

¶ 53       In order to establish prejudice, "a defendant must prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different."  *Smith*, 195 Ill. 2d at 188 (citing *Strickland*, 466 U.S. at 694).  "A reasonable probability is defined as a probability that is sufficient to undermine confidence in the outcome.  Thus, the defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair."  *Id.*

¶ 54       "Under certain circumstances, prejudice may be presumed.  Where defense counsel fails to subject the prosecution's case to meaningful adversarial testing, the adversary process is presumptively unreliable."  *Manns*, 373 Ill. App. 3d at 239 (citing *United States v. Cronic*, 466 U.S. 648, 658-59 (1984)).

¶ 55        Defendant argues defense counsel's failure to (1) request a sanity evaluation of defendant and (2) raise the affirmative defense of insanity before the discharge hearing prejudiced him. Specifically, defendant argues prejudiced is presumed in this case because counsel's failure to raise the affirmative defense of insanity amounted to a failure to subject the State's case to meaningful adversarial testing. In support of his argument, defendant cites *People v. Young*, 220 Ill. App. 3d 98, 581 N.E.2d 371 (1991), and *Manns*, 373 Ill. App. 3d 232.

¶ 56        In *Young*, 220 Ill. App. 3d at 109, the appellate court found defense counsel was ineffective for failing to raise an insanity affirmative defense at the defendant's discharge hearing. The court noted that defense counsel called no witnesses and engaged in minimal cross-examination and argument. *Id.* at 107. Further, the court found defense counsel put on a defense that was unsound as a matter of law. *Id.* In addition, although the defendant had been examined by a number of experts who unanimously found that he suffered from delusional thinking and paranoia, counsel did not attempt to incorporate evidence of the defendant's mental health into the record. *Id.* at 108. The court stated, "It cannot be said that [the] defendant wished to concede his guilt or even that he was competent to do so." *Id.* at 107-08. Thus, the court found "defense counsel failed to subject the prosecution's case to meaningful adversarial testing and that the result of the discharge hearing must therefore be presumed unreliable." *Id.* at 107.

¶ 57        In *Manns*, 373 Ill. App. 3d at 241-42, this court found defense counsel's failure to mount a meaningful challenge to the State's case by presenting the defense of insanity resulted in a presumption of prejudice and rendered the result of the discharge hearing unreliable. At the discharge hearing, defense counsel did not cross-examine one of the State's witnesses and only subjected the other witness to minimal questioning. *Id.* at 241. Defense counsel "did not offer additional evidence other than [the] defendant's own testimony." *Id.* Defense counsel "offered

no argument at all." *Id.* Further, defense counsel did not "suggest the court acquit [the] defendant by reason of insanity[,]" despite an expert opinion that the defendant had " 'no appreciation for the seriousness of the alleged act.' " *Id.* Moreover, the offense at issue was particularly bizarre, where the defendant robbed a bank, demanding only $100, and then later claimed he owned the bank and that the bank had been stolen from him. *Id.* at 236-37. While *Young* and *Manns* are instructive, we find prejudice should not be presumed in this matter where counsel's conduct failed to demonstrate a complete breakdown in adversarial testing as seen in *Young* and *Manns*.

¶ 58 Here, defense counsel did cross-examine Officer Katie Dolbeare and Officer Megan Dolbeare about whether defendant suffered from a mental condition at the time of the offense. Defense counsel also argued in closing that defendant "didn't have the ability to form the state of mind to commit the offenses" and asked the trial court to acquit defendant by reason of insanity. Thus, defense counsel's failure to raise the affirmative defense of insanity did not amount to a failure to subject the State's case to meaningful adversarial testing resulting in presumed prejudice. However, we find actual prejudice existed based on defense counsel's representation.

¶ 59 Actual prejudice existed where defense counsel failed to (1) request a sanity evaluation and (2) raise the affirmative defense of insanity before the discharge hearing. An insanity defense was reasonable based on the evidence in the record and it was the only viable defense available to defendant. Had defense counsel obtained a sanity evaluation, presented the sanity evaluation at the discharge hearing, and raised the affirmative defense of insanity, there is reasonable probability that defendant would have been acquitted of the charges. Because defendant was found not not guilty, he is subject to confinement and treatment, as well as to a

criminal trial should he be restored to fitness.  See 725 ILCS 5/104-25(d) (West 2018); *Waid*, 221 Ill. 2d at 470-71.  However, had the trial court been presented with evidence to support an insanity defense and entered a finding of not guilty by reason of insanity, defendant would be absolved of guilt and not face a criminal trial or punishment.  *People v. Harrison*, 226 Ill. 2d 427, 435-37, 877 N.E.2d 432, 436-37 (2007).

¶ 60        Accordingly, we find defense counsel was ineffective where she failed to (1) request a sanity evaluation and (2) raise the affirmative defense of insanity before the discharge hearing.  Therefore, we reverse the trial court's order finding defendant "not not guilty" and remand for a new discharge hearing.

¶ 61                                  III. CONCLUSION

¶ 62        For the foregoing reasons, we reverse the trial court's judgment and remand for a new discharge hearing.

¶ 63        Reversed and remanded.